Home Financers' Building & Loan Association,
Appellant, *v.* Michael et al.

Argued October 25, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Joseph A. Allen,* for appellant.

*Joseph M. Smith*, and with him *Joseph Neumann Smith*, for appellees.

Opinion by Cunningham, J., March 13, 1935:

Appellant was the plaintiff below in a proceeding in equity to set aside a conveyance between the defendants of five pieces of real estate, upon the ground that the deed had been made with intent to defraud it and other creditors of the grantors therein. The chancellor, Lewis, J., entered a decree nisi dismissing the bill; appellant's exceptions thereto were dismissed by the court, in banc, and we now have its appeal from the final decree.

On January 3, 1933, Mary J. Michael, one of the defendants, was the owner of five houses and lots in the City of Philadelphia; she was indebted to the appellant building and loan association, as the defendant in a judgment entered by it upon her bond, in which judgment damages had been assessed at $1,131.06, with interest. Her properties were subject to mortgages, aggregating $7,500. On that date she, along with her husband, Charles A. Michael, also a defendant, conveyed these properties to her married daughter, Helen V. Fitzpatrick, the third defendant. At the same time she satisfied a mortgage for $2,500 which she held upon premises owned by her daughter at No. 4217 Cottman Street.

Appellant averred in its bill that the conveyance of the five properties was made, and the satisfaction of the mortgage entered, for the purpose of hindering, defrauding and delaying it and other creditors of the mother. The prayers of the bill were that the conveyance be set aside and that the satisfaction of the mortgage be cancelled. The deed recited the consideration thereof as being "the sum of $1 and other good and valuable considerations," and there was attached thereto a certificate in behalf of the grantee

that the "actual consideration [was] less than $100." The averments of the answer were accurately summarized by the chancellor, in his statement of the pleadings, as follows:

"Defendants replied that the conveyances and satisfaction of mortgage were for a fair consideration and made in good faith, alleging that, the Michaels having fallen on hard times—Charles A. Michael having had but casual employment for four years—they accepted advances from their daughter, Helen V. Fitzpatrick, and her husband, Bernard J. Fitzpatrick, for the payment of mortgage interest, taxes and expenses of upkeep on the real estate formerly owned by the Michaels, these advances being in excess of $2,500; that Helen V. Fitzpatrick received the Michaels in her home as boarders at $10 per week, which was never paid, this item amounting to $4,240 at the date of defendants' answer.

"The defendants further replied that income from the real estate was insufficient to meet carrying charges, wherefore, the conveyances and satisfaction of mortgage were effected as a consideration for the cancellation of the indebtedness of the Michaels to their daughter, which consideration was further alleged to be of less value than the indebtedness."

Among the findings of fact made by the learned chancellor was one to the effect that the potential equity of Mary J. Michael in the properties conveyed did not exceed $5,000. Another was, that, as a result of the conveyance and satisfaction of the mortgage, the Michaels were "rendered insolvent, in that they had no property, either real or personal, remaining at the time, and were largely indebted to plaintiff and other creditors."

Findings of fact nine to thirteen read:

"9. For several years prior to January, 1933, the several parcels of real estate owned by Mary J.

Michael, the subject-matter of this bill, were not producing enough revenue to pay the taxes, interest on mortgage, repairs and other carrying charges, and she was compelled to borrow divers sums of money from her daughter, Helen V. Fitzpatrick. On January 3, 1933, these loans aggregated about $2,200.

"10. At and immediately before January 3, 1933, the income of the real estate was rapidly decreasing because of reductions in rent, vacancies, and arrearages, and Mary J. Michael had prevented foreclosure of the mortgages for non-payment of taxes and interest by using money borrowed from her daughter for that purpose.

"11. In the month of September, 1929, defendant, Charles A. Michael, being unemployed and there being no income for the support of himself and his wife, Mary J. Michael, they went to live with their daughter, Helen V. Fitzpatrick, for an agreed board of $10 a week each. No payments were ever made on this obligation as Michael continued unemployed and Mrs. Michael had no source of income other than the real estate, which was not producing any net income.

"12. On January 3, 1933, the amount due Helen V. Fitzpatrick for board and lodging aggregated $4,240.

"13. The certification as to value of the premises conveyed, as written upon the deed, was for the purpose of fixing, or avoiding payment of United States revenue stamps tax, and has no bearing upon the actual value of the real estate, or the consideration for the conveyance."

An attentive reading of the testimony demonstrates that these findings of fact are supported by competent evidence and as they have been affirmed by the court, in banc, we accept them: Belmont Lab. Inc. v. Heist et al., 300 Pa. 542, 151 A. 15, and Stalwart B.

and L. v. Monahan et al., 104 Pa. Superior Ct. 498, 159 A. 189.

Convinced, as we are, upon consideration of the whole record, that the court below was fully justified in dismissing the bill, we concur in and adopt these excerpts from the discussion by the chancellor:

"The defendants' testimony tends strongly to bear out their allegations as to the existence of fair consideration. They have met and overcome the presumptions arising against them by reason of their relationship.

"Helen V. Fitzpatrick advanced substantial sums to pay the carrying charges of her mother's real estate. The daughter enumerates total payments of $1,877. Her bank book indicates total withdrawals of $1,987, of which all but about $50 was so used, according to her testimony. In addition, checks of the daughter or her husband drawn for the same purpose are in evidence to the extent of $274.72. Nor is there any contradiction of the testimony of the defendants that Charles A. Michael has had little employment for the past four or five years, and that the Michaels went to board with the Fitzpatricks in September, 1929, for a payment to be made at the rate of $10 a week each, which sum they have been unable to pay.

"The testimony is likewise clear that the real estate, taken as a whole, will not carry itself nor is there any reason to doubt that the daughter's payments prevented earlier loss by the mother of her real estate.

"Defendant, Helen V. Fitzpatrick, was a creditor of Mary J. Michael within the meaning of the Act of May 21, 1921, P. L. 1045, having a matured, liquidated, fixed claim. Section 3 of the Act [provides that, 'Fair consideration is given for property or obligation:]

'(a) When, in exchange for such property or obligation, as a fair equivalent therefor and in good

faith, property is conveyed or an antecedent debt is satisfied; or

'(b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.'

"Helen V. Fitzpatrick accepted, in exchange for debts due to her of approximately $6,000, the cancellation of a $2,500 mortgage and the conveyance of certain pieces of realty that were subject to existing mortgages and in which the equities were of a highly uncertain value; even at the plaintiff's valuation these equities did not exceed $5,000 and in order to accept this testimony it is necessary to assume that a present market exists. There is no such evidence before the chancellor.

"The obligations from mother to daughter appear to have been honestly contracted. ...... It is true that if the conveyance to a child was for a nominal recited consideration, the burden is upon the child to show that the conveyance was fair: Queen-Favorite B. and L. Assn. v. Burnstein et al. (1933), 310 Pa. 219, 165 A. 13; [See also Stalwart B. and L. Assn. v. Monahan, supra,] ......

"One other question remains to be disposed of. Plaintiff contends that the recital in the conveyance from the Michaels to their daughter of a consideration less than $100 was for the purpose of avoiding payment of the United States revenue tax, and argues that the defendants are prevented from proving a consideration contrary to that recited in the deed. We cannot agree with this view.

"In Williams et al. v. Southern Mutual Insurance Co., 312 Pa. 114, the defense to an action on a fire policy was that the insured kept two sets of books, one set being fraudulent; the defendant asserted that

the false books were for the purpose of preparing U. S. income tax returns. The Supreme Court, per Mr. Justice MAXEY, said, at page 119: 'The trial judge correctly charged the jury that they could not find a verdict for defendant merely because they believed plaintiff company had falsified its income tax returns; that for defrauding the government the penalty would have to be imposed in another forum.'

"We believe that decision rules this case. And the federal courts have held that the absence of revenue stamps, in violation of the Revenue Act, no longer renders the instrument invalid or inadmissible in evidence: Cole v. Ralph, 252 U. S. 286."

It may be added, as pointed out in the Williams case, that if the certificate was fraudulent the victim was the government and not appellant.

Under the facts as found and discussed by the chancellor, the conclusion of law, that neither the conveyance nor the satisfaction of the mortgage was fraudulent, naturally follows. We also agree with the court below that the defendants were not estopped from showing the real consideration for the conveyance. In our opinion, this proceeding was properly disposed of in the court below and it now becomes our duty to dismiss the assignments of error.

Decree affirmed at appellant's cost.