THE FIRST NATIONAL BANK IN FORT LEE, complainant-appellant,

*v.*

LESTER C. BURDETT and JOHN KENLON, as trustees, defendants-respondents.

[Submitted October term, 1936.   Decided January 22d, 1937.]

*Messrs. Major Back & Carlsen,* for the appellant.

*Mr. Warren Dixon, Jr.,* for the respondents.

The opinion of the court was delivered by

WELLS, J.

After the bank holiday of March 5th, 1933, the First National Bank of Fort Lee, Fort Lee, New Jersey, met with financial difficulties and was taken over by the comptroller of the currency. A liquidation plan was worked out and approved by the comptroller. Its provisions are embodied in an agreement dated October 22d, 1934, and entered into by and between "The First National Bank of Fort Lee, Fort Lee, New Jersey" (hereinafter referred to as the "Old Bank"), and the "First National Bank in Fort Lee," the complainant (hereinafter referred to as the "New Bank") and Fulton R. Hardman, Lester C. Burdett and John Kenlon, trustees, hereinafter referred to as "Trustees."

Under this agreement a new bank was to be formed. The assets of the Old Bank were to be divided in two classes. Class A assets were to be conveyed to the New Bank in consideration of the assumption by it of all liabilities of the Old Bank except liabilities to its stockholders; class B assets, under an agreement of the same date, were to be conveyed to the Trustees for the benefit of depositors and creditors. The New Bank was to pay the depositors of the Old Bank fifty-five per cent. of their deposits in cash.

That portion of section 4 of the agreement applicable to the question before us reads as follows:

"For a period of six months from the date of this contract, the New Bank shall have the right to return to the Old Bank, or to the Trustees, any and all of the Bills Receivable and/or loans and discounts purchased hereunder (as herein defined) consisting solely of promissory notes, trade acceptances, bills of exchange, bonds and mortgages and other instruments of like character (and shall have the like right to return any and all assets of like character received in exchange therefor as provided in this paragraph) and to receive in exchange therefor cash, if cash is available, or in lieu of cash, any other asset or assets selected by New Bank equivalent to the face amount of the asset or assets so returned," &c.

The right conferred upon the New Bank by section 4 was subject, however, to the limitation of section 7, as follows:

"The New Bank, shall have the right, during the aforesaid period of substitution, to permit renewals in whole or in part of Bills

"Receivable, as herein defined, secured or unsecured purchased by it hereunder, said renewal paper, however, to have a maturity period not greater than the maturity period of the paper renewed, but in no event shall any such renewal mature beyond the expiration of the substitution period hereinbefore provided."

Among the assets taken over by the New Bank were (1) a bond and mortgage of Louis F. Hoebel for $4,230, and (2) a note of Alfred Iasillo for $1,870, secured by a mortgage.

The Iasillo note was payable October 26th, 1934, two days after the date of the agreement. The New Bank accepted renewals of this note from month to month to March 23d, 1935, on which date the note then due was surrendered and a renewal note was accepted by the New Bank, the maturity date of which was April 23d, 1935, or one day *after* the expiration of the substitution period of six months. On April 20th, 1935 (two days before the expiration period), the New Bank demanded of the Trustees that in accordance with the six months' substitution clause of the agreement, they take over the Hoebel and the Iasillo obligations and substitute cash in their stead.

The Trustees refused to comply. The New Bank thereupon brought this suit to compel specific performance. The court of chancery directed the Trustees to take over the Hoebel bond and mortgage (and the Trustees complied and do not appeal), but dismissed the bill as to the Iasillo note and mortgage, and the New Bank appeals from this portion of the decree.

The vice-chancellor held that the complainant (New Bank) could have declined the renewal of the Iasillo note and could have exercised its rights to exchange the note falling due March 23d, 1935, for cash, or any Class B asset, but that it "waived" its right to make such exchange by surrendering the exchangeable note for one which did not come within the provisions of the substitution clause of the agreement; that the complainant's demand that the Trustees take over the new Iasillo obligation, made after the New Bank had accepted it, was not within the terms of the agreement and could not be enforced.

The appellant (New Bank) argues two points for reversal: First, that the court below erred in holding that it had waived its right under the agreement.

Second, that the court below erred in its construction of the agreement between the parties.

Under the first point, appellant argues that the case was tried below on the theory of "waiver;" that the amended answer set up "waiver" as a defense and that the vice-chancellor in his opinion in finding for the respondents (Trustees) said that the complainant (New Bank) "waived" its rights to make such exchange, &c.; that it was on this issue alone that respondents prevailed and that they cannot now for the first time in this court urge a ground neither pleaded, argued nor decided below.

Legally speaking, the New Bank's right was not "waived" but forfeited.

However, it is easy to gather from the pleadings coupled with the testimony and argument below that the Trustees' contention was that the right of substitution existed only as to those obligations which the New Bank held which did not extend beyond the substitution period; that is, that the language of the agreement itself defined the rights of the New Bank to substitute and the obligations of the Trustees to permit substitution, and that beyond that neither party could go.

It is likewise clear by reading the opinion of the vice-chancellor that when he used the word "waived" he meant that the New Bank had "forfeited" or "lost" its right to make the exchange it demanded.

We find no merit in appellant's first point.

As to the appellant's second point, we do not think that the court below erred in its construction of the agreement between the parties.

There is no difficulty in ascertaining from the instrument itself the intention of the parties thereto, "and where the contract is perfectly clear and unambiguous in its language and provisions" (as is the case here) "no resort is necessary nor will be made to any of the rules of construction (unless some latent ambiguity be proved)." *Briggs* v. *United Shoe Machinery Corp., 92 N. J. Eq. 277.*

The rule is firmly established that the parties are bound by the agreement which they have made. "The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce a contract as it is written." *Kupfersmith* v. *Delaware Insurance Co., 84 N. J. Law 271.*

We are of the opinion that the court below gave the only interpretation to the agreement that could be reasonably given.

The decree of the court of chancery is therefore affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 13.

*For reversal*—None.