67 N.J. Super. 348 (1961)
170 A.2d 488
MARY GUACLIDES, PLAINTIFF-RESPONDENT,
v.
FRANCIS F. KRUSE, JR., DEFENDANT, AND
FRANCIS F. KRUSE, JR., THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
ALBERT SHOTMEYER, ET AL., PARTNERS, ETC., THIRD-PARTY DEFENDANTS-APPELLANTS, AND ELECTRA CRIEZIS, ETC., THIRD-PARTY DEFENDANT, AND THEODORE GUACLIDES, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1961.
Decided April 27, 1961.
*350 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Howard Stern argued the cause for third-party defendants-appellants (Messrs. Hofstra & Hofstra, attorneys).
Mr. William V. Breslin argued the cause for plaintiff-respondent (Mr. Samuel J. Davis, on the brief).
Mr. David L. Maltz argued the cause for defendant and third-party plaintiff-respondent.
*351 The opinion of the court was delivered by KILKENNY, J.A.D.
These related specific performance actions were submitted to the Chancery Division on a written stipulation of the facts.
By written contract of March 26, 1959 the plaintiff agreed to buy and the defendant Kruse agreed to sell two tracts of contiguous land consisting of several lots in each tract, owned by Kruse and located in Englewood Cliffs, Bergen County, New Jersey. The purchase price was $110,000, a deposit of $5,000 was paid on account, and title closing was set for May 1, 1959. The conveyance was to be by bargain and sale deed, with covenant against grantor's acts, free from all encumbrances, but subject, inter alia, to the rights of tenants and occupants in possession under lease or otherwise.
The title did not close as scheduled. After execution of the agreement, the buyer discovered that Cliff Enterprises, Inc., a predecessor in title of the defendant Kruse and of which corporation he was the president, had entered into a written agreement on August 19, 1953, whereby there was granted to Farmers Oil Supply Co. (hereinafter "Farmers"), an option of first refusal or preemptive right to purchase lots 7, 8, 9 and 10 in block 9B on the assessment map of the Borough of Englewood Cliffs. These four lots were only a portion of the second tract embraced in the plaintiff's contract but upon them there was a gasoline service station. The agreement of August 19, 1953 was recorded in the Bergen County Clerk's Office on January 12, 1954, in Deed Book 3501, page 26.
Plaintiff filed her complaint in the Chancery Division, alleging the foregoing facts and stating that the said option of first refusal or preemptive right constituted a defect in title upon a portion of the premises which the defendant Kruse had contracted to sell to her. She asserted that she and the defendant Kruse were unable to agree on the amount of the abatement of purchase price by reason of the unmarketability of title to that portion of the premises burdened *352 with an option of first refusal. She asked the court to determine the amount of the abatement and to order specific performance as to so much of the premises as is marketable and capable of conveyance by the defendant Kruse. In supplementary counts she sought $50,000 in damages and a judgment obligating the defendant to deliver a deed to her to that portion of the premises allegedly unmarketable, after the expiration date of the option of first refusal, at such price as the court should determine.
Kruse answered and thereby offered a deed to the plaintiff for the entire curtilage upon payment of the full purchase price. He contended that the preemptive right in the agreement of August 19, 1953 was void and not binding, and set forth several other defenses not immediately pertinent, and counterclaimed for specific performance against the plaintiff for the full purchase without any abatement. The plaintiff answered the counterclaim, reasserting the unmarketability of title as to lots 7, 8, 9 and 10, as aforesaid.
The defendant Kruse filed a third-party complaint against Farmers and others, and therein, inter alia, sought a judgment determining that Farmers did not have a right of first refusal or preemptive right by reason of the agreement of August 19, 1953, and that any such right therein was now void and of no effect; and in the alternative that the court fix the amount to be paid by Farmers for a deed to the four lots upon which the gasoline service station was erected.
Albert Shotmeyer, Henry Shotmeyer and Robert A. Wales, partners trading as Farmers Oil and Supply Co., answered Kruse's third-party complaint and counterclaimed against him and the plaintiff in the main action for specific performance of the agreement of August 19, 1953, or in the alternative for damages for breach of contract; and also for a declaratory judgment that the four lots described in the agreement of August 19, 1953 were subject to a lien and encumbrance to the extent that they have a preemptive right and option to purchase the same.
*353 The Chancery Division decided that Farmers did not have a preemptive right, or option of first refusal, covering the entire tract, but only as to the gasoline service station and the four lots on which it was located. It concluded that the option to purchase only a part of the entire tract made it inoperative against a contract for the sale of the entire tract, holding the option unenforceable in the instant case "since there is no price stipulated and no method provided for its ascertainment in view of the situation which exists here." The counterclaim of Farmers was dismissed and the Chancery Division entered a judgment for the specific performance of plaintiff's contract, without abatement. Farmers appeals from that judgment.
We must determine in limine the validity and present efficacy of the option of first refusal relied upon by Farmers, because the defendant Kruse contends that it is not legally binding. He argues that the agreement which granted it was without consideration to his predecessor in title, Cliff Enterprises, Inc., grantor of the option; that the said agreement has expired by its terms; that the said agreement was indefinite as to time, and more than a reasonable time has expired since the date thereof; that the agreement was incomplete, indefinite and uncertain in its terms, and fixed no price at which the sale may be made; that the right of first refusal cannot lawfully be exercised by its terms, because the agreement recites that "the property shall be first sold," and then offered to the persons claiming the right of first refusal; and that the said agreement is void under R.S. 25:1-5, the statute of frauds.
We find no merit in any of those assigned reasons. The option is contained in the tripartite written agreement of August 19, 1953, signed by Cliff Enterprises, Inc., as party of the first part, owner of the property; By John F. Palmer and William L. Palmer, partners trading as Englewood Cliffs Friendly Service Station, as party of the second part, tenants of the gasoline service station; and by Henry Shotmeyer, Albert Shotmeyer and Robert A. Wales, partners *354 trading as Farmers Oil and Supply Co., party of the third part, supplier of the consideration specified therein. Thus, the agreement expressly provides:
"In consideration of the party of the third part furnishing and erecting a large neon sign on the roof of the building situated on premises known as Lots 7, 8, 9 and 10 in Block 9B on the Assessment Map of the Borough of Englewood Cliffs, Bergen County, New Jersey, furnishing and installing four (4) new gas pumps on the premises, painting and lettering the building on said premises and removing the tree on the north side of the building, if necessary, and the sum of One Dollar ($1.00) and other good and valuable consideration, it is agreed as follows:"
That consideration obviously enured to the benefit of Cliff Enterprises, Inc., the landlord. But even if the benefit of the consideration flowed only to the tenant, the law is clear that one may bind himself by contract, even though some third person receives the benefit of the consideration. Coast National Bank v. Bloom, 113 N.J.L. 597, 602 (E. & A. 1934); Restatement, Contracts, § 75(2).
The option in the aforesaid agreement has not expired by its terms. Nor can it be justifiably said that the agreement was indefinite as to time, and more than a reasonable time has expired. The agreement provided:
"1. That the terms of an agreement entered into among the above parties, dated December 10, 1948, and recorded in the Bergen County Clerk's Office in Book 2932, page 118, shall be extended for an additional period of ten years from the date of the expiration of the lease therein recited.
2. That in the event of a sale of the above described premises by the owners thereof, their Grantees, successors and assigns, the party of the third part shall have the option to purchase the said premises for the same price as may be offered by a bona fide purchaser thereof. In the case of sale, thirty days' notice shall be given to the party of the third part of the proposed sale and the purchase price therefor, and the said party of the third part shall, within the said period of thirty days, give notice of its desire to meet the terms of the proposed sale, said notice to be given in writing. Upon said notice having been given in writing, whereby the party of the third part agrees to take title to said premises, a written agreement shall be entered into between the owner and the party of the third part and thereafter the party of the third part *355 shall be given a period of sixty (60) days within which to examine the title and pay the purchase price therefor."
Reference is made above to an agreement of December 10, 1948 entered into by the same parties. Therein, they covenanted, in consideration of Farmers' installing pumps and tanks at the gas station, at its expense, "in order to properly and advantageously operate said station," that the tenants would buy from Farmers all gasoline, oil and other petroleum and automotive products sold or dispensed from the station for a period of five years from the date of the agreement. They further agreed that during that five-year period, no gasoline, petroleum products or automotive supplies, except those purchased "by the Tenants or then occupants of said premises" from Farmers, "shall be kept at, sold or dispensed from, the aforesaid premises." Title to the pumps, tanks and equipment was reserved in Farmers, with right of removal upon breach of the agreement or after the termination thereof. Despite the reference in the agreement of August 19, 1953, there was no "lease," eo nomine, recited in the agreement of December 10, 1948. It is also conceded that the tenants have and had no lease of the realty, but have been and are only monthly tenants.
Therefore, the only reasonable interpretation of the August 19, 1953 agreement is that it extended the five-year agreement of December 10, 1948 for another ten years, thus making the new expiration date December 10, 1963. When the 1953 agreement, in the next paragraph, gave Farmers the option of first refusal "in the event of a sale of the above described premises by the owners thereof, their Grantees, successors and assigns," the necessary implication is that this right would exist during the life of the agreement, i.e., until December 10, 1963. As stated in Wellmore Builders, Inc. v. Wannier, 49 N.J. Super. 456, 466 (App. Div. 1958):
"Our courts hold to the view that the construction to be adopted of a written instrument like the agreement of first refusal here in *356 question is the one `which appears to be in accord with justice and common sense and the probable intention of the parties. It is to be interpreted as a business transaction entered into by practical men to accomplish an honest and straightforward end.' Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)."
Accordingly, the time during which the option of first refusal was exercisable was definite and fixed, and has not yet expired.
There is no lack of definiteness as to the price at which the optionee may exercise its preemptive right. That price is fixed by the offer of a bona fide purchaser acceptable to the property owner. Such options have been repeatedly upheld in this and other jurisdictions and do not contravene our statute of frauds. R.S. 25:1-5. See Wellmore Builders, Inc. v. Wannier, supra; Brenner v. Duncan, 318 Mich. 1, 27 N.W.2d 320 (Sup. Ct. 1947); New Atlantic Garden, Inc. v. Atlantic Garden Realty Corporation, 201 App. Div. 404, 194 N.Y.S. 34 (App. Div. 1922), affirmed 237 N.Y. 540, 143 N.E. 734 (Ct. App. 1923); L.E. Wallach, Inc. v. Toll, 381 Pa. 423, 113 A.2d 258 (Sup. Ct. 1955); 170 A.L.R. 1068 (1947).
While the option is somewhat inexpertly drawn by providing that Farmers shall have the opportunity of purchasing the gas station property for the same price as may be offered by a bona fide purchaser "in the event of a sale," we do not subscribe to the contention of defendant Kruse that the property must first be sold before the option applies. To us the intended purpose of the agreement was to give Farmers a preemptive right to purchase the specified property, if Kruse intended to accept a bona fide offer for its sale. We conclude on this aspect of the case that the option is valid, still vital, and a burden upon the property.
We turn next to the effect of Kruse's acceptance of plaintiff's offer to buy for $110,000 Kruse's entire curtilage, consisting of two tracts of land comprising approximately 53,300 square feet, upon Farmers' preemptive right to purchase the gas station portion thereof, having only 9,200 *357 square feet of that larger parcel. As indicated in the better reasoned cases collected in an annotation at 170 A.L.R. 1068 (1947), the holder of the option of first refusal on a portion only of a larger tract may not obtain specific performance of his option so as to require conveyance to him of the whole property the owner desires to sell. As the trial court here properly pointed out, a preemptive right to purchase a part only of the whole does not give a preemptive right to purchase the whole. To rule otherwise would be a judicial remolding of the contract without legal authority. Nor may the property owner, by an acceptance of an offer to sell the whole, be compelled by judicial decree to dispose of the optioned part separately from the property as a whole. An attempt to sell the whole may not be taken as a manifestation of an intention or desire on the part of the owner to sell the smaller optioned part so as to give the optionee the right to purchase the same. New Atlantic Garden, Inc. v. Atlantic Garden Realty Corporation, supra; Sautkulis v. Conklin, 1 A.D.2d 962, 150 N.Y.S.2d 356 (App. Div. 1956), affirmed 2 N.Y.2d 919, 161 N.Y.S.2d 885, 141 N.E.2d 916 (Ct. App. 1957); Atlantic Refining Co. v. Wyoming National Bank, 356 Pa. 226, 51 A.2d 719, 170 A.L.R. 1060 (Sup. Ct. 1947); American Oil Co. v. Eastern Market Co., 60 York Leg. Rec., Pa., 33 (1945); L.E. Wallach, Inc. v. Toll, et al., 381 Pa. 423, 113 A.2d 258 (Sup. Ct. 1955); Smith v. Traxler, 228 S.C. 418, 90 S.E.2d 482 (Sup. Ct. 1955).
Only one jurisdiction, so far as we know, entertains a different view. In Brenner v. Duncan, 318 Mich. 1, 27 N.W.2d 320 (Sup. Ct. 1947), where a lease covering the west 75 feet of a 100-foot parcel gave the tenant first preference to purchase the demised premises in the event of a sale, but the landlord sold the entire parcel to a third person for $15,000 without giving the tenant an opportunity to purchase, the landlord was deemed to have sold the 75-foot parcel for a sum bearing such ratio to the purchase price as the value of the 75-foot parcel bore to the value of the *358 entire parcel. The tenant was held entitled to purchase the 75-foot parcel for such price if he so desired. There was no determination that he had a right to purchase the entire parcel. The Michigan court cited no legal authority in support of its conclusion.
Farmers also cites First National Exchange Bank of Roanoke v. Roanoke Oil Co., Inc., 169 Va. 99, 192 S.E. 764 (Sup. Ct. App. 1937), in support of its claim to specific performance. But that case is distinguishable because of its own special facts. There, a lease covering one portion only of a two-parcel tract provided that the lessors could terminate the lease upon receiving a bona fide offer to buy the "said premises, free and discharged of this lease," by giving the lessee five days' opportunity to buy "the said property" upon the terms of such offer. When the lessors received an offer to buy both parcels for a unit price of $20,000, they gave the lessee notice of this offer and told it that they could do nothing "except sell the whole property." Upon the lessee's then accepting the offer to buy the whole tract for $20,000, the lessors sought to withdraw that offer and notified the lessee that they had an offer of $11,500 for the optioned parcel, also a gas station, and $8,500 for the adjoining parcel. The Virginia Supreme Court of Appeals determined that the lessors had "made a definite offer as to price, terms, and subject-matter. This offer * * * was accepted without modification or change." Accordingly, the lessee was granted specific performance as to the entire two-parcel tract for $20,000. Thus, the decision rests upon a finding of an enlarged offer and its acceptance, applying an elementary principle of contract law.
The weight of authority is opposed to the Michigan rule of apportionment of the price, nor can such a rule be supported in logic. In order to apportion, a court would not only have to remake the parties' agreement, but would also be forced either to indulge in the unwarranted assumption that every acre of the parcel was of equal value, or to engage in the cumbersome and invariably unsatisfactory task of *359 weighing expert testimony on the comparative values of the two parcels. We believe that the above New York and Pennsylvania cases express the sounder view in denying the optionee specific performance as to the whole property or the part covered by the option. We hold that an option of first refusal as to a portion only of a tract may be exercised only if the owner determines to sell that portion for a separate consideration; and the attempted sale of the whole tract for a single price is no indication of an intention or desire to sell the portion alone. Therefore, Kruse may not be compelled by Farmers to sell to it the gas station part, merely because he has determined to sell all his property including that part for a unit price.
However, the above cases which deny the optionee specific performance as to the whole or part hold that the owner of the whole may not impair or destroy the preemptive right to purchase the part by a sale or agreement to sell the whole to some third person. The courts have enjoined the conveyance of the portion covered by the option; or where title has already passed to a transferee, with actual or constructive notice of the option, a reconveyance of the optioned portion has been ordered. We do not regard Sautkulis v. Conklin, supra, as a departure by the New York Court of Appeals from its earlier decision in New Atlantic Garden, Inc. v. Atlantic Garden Realty Corporation, because Sautkulis reaffirmed the denial of specific performance to the optionee, without any discussion by the Court of Appeals as to the injunctive remedy. We concur in the generally accepted view as to the optionee's right to an injunction to restrain a vitiating of its option by the inclusion, in the owner's prospective sale, of property in excess of that covered by the option. To allow the owner of the whole to by-pass the optionee merely by attaching additional land to the part under option would render nugatory a substantial right which the optionee had bargained for and obtained.
*360 While Farmers is not now entitled to specific performance of its option, either as to the whole property or the portion covered by the option, it is entitled to injunctive relief. Accordingly, the defendant Kruse will be restrained from making any sale of the property described in the agreement of August 19, 1953 until Farmers shall have first been given a notice of any contemplated sale thereof and shall be accorded the first right to purchase the same pursuant to the provisions of the said agreement.
This brings us to a consideration of the rights of plaintiff and defendant Kruse inter se under their agreement of March 26, 1959. Initially, in view of our prior determinations herein, so much of the judgment of the Chancery Division as ordered specific performance of that agreement without any abatement, must be reversed.
As between the plaintiff and defendant Kruse, there may be no transfer of title to the gas station portion of the property, until Farmers' preemptive right has been exhausted. Nor may Kruse validly agree that he will not sell the gas station property to anyone during the life of the option, since to do so would effectively destroy Farmers' preemptive right prematurely. Wellmore Builders, Inc. v. Wannier, supra. If Kruse receives a bona fide offer from the plaintiff or anyone else for the purchase of the gas station property before December 10, 1963, which it desires to accept, it must first submit an offer at that price to Farmers; and, if Farmers does not exercise its preemptive right to buy the gas station according to the terms of that offer, Kruse may then contract to sell the station to the offeror. Kruse may also sell the remainder of his property, other than the gas station, to the plaintiff or anyone else, at any mutually agreeable price, without submitting notice of that offer to Farmers.
Plaintiff sought in her complaint specific performance as to that portion of Kruse's property not burdened by the option, with an abatement in the purchase price as to the gas station. However, at oral argument before us, her *361 attorney represented that she wanted the whole property and did not desire a conveyance unless the gas station were included. Also, she is willing to take the entire property now, without any abatement, subject to Farmers' preemptive right; or she will wait until Farmers' option expires, for a conveyance of the whole property, paying the contract price then. She asserts an equitable right to a judgment binding her and the other parties to these terms. Kruse is willing to convey all the property now for the contract price of $110,000, either to plaintiff alone or part to plaintiff and part to Farmers on an apportionment of the price. But if a present conveyance of all is not now legally possible, Kruse does not want to be bound under his contract with plaintiff until December 10, 1963.
While specific performance with an abatement is a common remedy in equity, it would be inequitable to apply that remedy here. The plaintiff does not now want that remedy, and the defendant seller wants a sale only of his entire property. The gas station represents a material part of the bargain. We may not force upon the plaintiff buyer the remainder of the property at an adjusted price, because that would result in a contract by judicial decree different from the agreement contemplated by the parties. See Lounsbery v. Locander, 25 N.J. Eq. 554 (E. & A. 1874). They could voluntarily amend their agreement by a fair allocation of the total purchase price to the gas station, making title closing on the entire property contingent upon Farmers' rejection of the offer for the gas station at the allocated price therefor. But the court may not order such an arrangement.
Is it equitable to keep alive, over the defendant Kruse's objection, the agreement between plaintiff and Kruse, by adjudicating that Kruse must convey the entire property to plaintiff at the original consideration of $110,000, when and if the option as to the gas station is not exercised by December 10, 1963? We think not. Such a substantial change in the time for performance of the contract requires *362 the mutual assent of the parties. It is a radical departure from one of the terms agreed upon, namely, that title would close on May 1, 1959, or within a reasonable time thereafter. While the plaintiff desires the court to make this time modification in the agreement, the defendant Kruse is unwilling to subscribe thereto. Except for the gas station portion, the remainder of the property, which is the larger area of the tracts, is unimproved and, as we assume, produces no income. Thus, forced retention of title by Kruse for an additional period of over 2 1/2 years could be unduly burdensome. On top of this, title may never close as between plaintiff and Kruse, if Kruse accepts an attractive offer for the gas station parcel, because plaintiff will not consummate the agreement without that parcel. Yet Kruse must keep open his freedom of choice of such an offer during the life of the option, as laid down in the Wellmore Builders, Inc. case, supra.
In Atlantic Refining Co. v. Wyoming National Bank, supra, the court noted, as we must in the instant case, that the purchaser of the whole tract had prior constructive notice of the preemptive right in the part. Here, the agreement containing the option of first refusal had been recorded long before the contract of purchase. Under the majority rule, plaintiff was also put upon inquiry notice, by the tenant's possession of the gas station and the presence of Farmers' pumps and tanks thereon, of a possible option to purchase on the part of the latter. Annotation, 17 A.L.R.2d 331, 332 (1951); see Wood v. Price, 79 N.J. Eq. 620 (E. & A. 1911). See Martinique Realty Corp. v. Hull, 64 N.J. Super. 599, 609 (App. Div. 1960). Additionally, the agreement between plaintiff and Kruse expressly stated that conveyance was subject to the "Rights of tenants and occupants in possession under lease or otherwise." In the Atlantic Refining Company case, the court dismissed not only the optionee's suit for specific performance, but also that of the purchaser of the whole tract, stating [356 Pa. 226, 51 A.2d 724]:
*363 "Obviously, Jacobs may not maintain a bill for the specific performance of his agreement to purchase the entire property. As to a large portion thereof, a prior right to purchase outstands in another. And Jacobs is effectively bound, both directly by actual notice and impliedly by legal imputation, with knowledge of that fact. * * * An impasse has been reached which is an effectual barrier to affirmative relief to either party under the existing circumstances."
The court refused to remold the agreements, concluding:
"* * * the title to the property will continue where it has been, viz., in the defendant bank, until such time as the bank chooses to dispose of the property with full regard for Atlantic's right of refusal to purchase `the demised premises,' as defined and described in the lease conferring the option, at the acceptable bid of another."
We deem that disposition equitable under the comparable circumstances of this case. Both plaintiff and Kruse knew, actually or constructively, of Farmers' preemptive right and neither is entitled to any superior position over the other. Unless they mutually agree to await closing of title until Farmers' right runs out, the court should not rewrite their agreement against the will of one of the parties.
As stated in First National Bank in Fort Lee v. Burdett, 121 N.J. Eq. 277, 281 (E. & A. 1936):
"The rule is firmly established that the parties are bound by the agreement which they have made. `The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce a contract as it is written.'"
See, too, Tanner Associates, Inc. v. Ciraldo, 58 N.J. Super. 398, 402 (Law Div. 1959).
While plaintiff asked for $50,000 as damages in the second count of her complaint, the disposition of her damage claim is governed by the contract of purchase. Therein, the parties acknowledged that the buyer might terminate the contract if title proved unmarketable or the seller could *364 not convey title to all the premises intended to be conveyed, and agreed:
"In the event of termination of this contract for any just cause, the party of the second part shall be entitled to the return of her deposit and a sum not to exceed $200.00 to cover search fees, and the said party of the second part shall not be entitled to recover for any other damage, loss or expense occasioned by reason of the unmarketability of title or inability of the party of the first part to convey as herein agreed."
Accordingly, the plaintiff is limited in her recovery of damages to those fixed by the parties in their agreement.

CONCLUSIONS.
The Chancery Division's dismissal of Farmers' counterclaim for specific performance of its still valid and subsisting option to purchase the four lots and gas station thereon is affirmed. Farmers has no right to purchase the entire property and may not have specific performance with relation thereto. However, the defendant Kruse will be restrained until December 10, 1963 from selling the portion of his property covered by Farmers' option to anyone other than Farmers, without giving Farmers the first opportunity to purchase this gas station portion at any bona fide offer therefor acceptable to Kruse.
That portion of the Chancery Division judgment granting specific performance of the agreement between plaintiff and defendant Kruse, without abatement, is reversed. The plaintiff buyer being unwilling to take title now to the remainder, without the gas station portion, specific performance with an abatement is denied. Specific performance in futuro covering the whole property, contingent upon expiration of Farmers' preemptive right, is denied. Plaintiff's damages against defendant Kruse are limited to a return of her deposit and search fees not exceeding $200.
The matter is remanded to the Chancery Division for entry of a modified judgment consistent with the views expressed herein. No costs to any of the parties.