SHELL OIL COMPANY, Plaintiff,

v.

TRAILER AND TRUCK REPAIR CO., INC., and the Howard Savings Bank, Defendants,

and

HERB C. ENTERPRISES, INC., Defendant/Third Party Plaintiff,

v.

Joseph C. WOODCOCK, Jr., Third Party Defendant.

Civ. A. No. 85–1743.

United States District Court, D. New Jersey.

July 9, 1986.

Harber & Freesman by Jacob Freesman, Fort Lee, N.J., for defendant Trailer & Truck Repair Co., Inc.

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Michael Quinn, Newark, N.J., for defendant Howard Savings Bank.

Lum, Hoens, Abeles, Conant & Danzis by Dennis J. Drasco, Newark, N.J., for defendant/third party plaintiff Herb C. Enterprises, Inc.

Tompkins, McGuire & Wachenfeld by David C. Scalera, Newark, N.J., for third party defendant Joseph C. Woodcock, Jr.

Mattson, Madden & Polito by Francis T. Giuliano, Newark, N.J., for plaintiff.

Meyner & Landis (Theodore I. Botter, of counsel), Newark, N.J., for defendant Trailer and Truck Repair Co., Inc.

## OPINION

STERN, District Judge.

This matter is before the Court on motions for summary judgment by plaintiff Shell Oil Company, by defendant Trailer &

Truck Repair Co., Inc. ("T & TR"), and by defendant Herb C. Enterprises, Inc. ("Herb C."). The case is here under the Court's diversity jurisdiction; New Jersey law applies.

In 1970, Shell Oil signed a lease for a property at a busy corner in Secaucus, New Jersey, for use as a service station. The lease term runs from 1972 to 1987. Section 9 of the lease grants Shell the right of first refusal in the event that T & TR either makes a bona fide offer to sell or receives a bona fide offer to buy the property. The lease obligates T & TR to give Shell notice of such a bona fide offer. The lease also contains a separate clause giving Shell an option to purchase the property at any time for $400,000.

In April 1984, T & TR executed a contract to sell the property to Herb C. Enterprises. On January 17, 1985, T & TR executed a deed transferring title to the property to Herb C. The deed relates that "the transfer is made for the sum of One hundred ninety-eight thousand two hundred fifty dollars ($198,250)." It is signed by Emily Buchmuller, President, and Eunice Buchmuller, Secretary of T & TR. An acknowledgment to the deed bears the sworn statement of Eunice Buchmuller that "the full and actual consideration paid or to be paid for the transfer of title is $198,250. (Such consideration is defined in N.J.S.A. 46:15–5.)"

The deed's statement of consideration is the basis for the state's realty transfer fee, N.J.S.A. 46:15–7. Furthermore, deposition testimony of T & TR's accountant, Mark Weiss, and copies of certain of T & TR's filings with the Internal Revenue Service, show that T & TR's shareholders paid federal capital gains tax based on a sales price of $198,250.

All parties agree that Shell was not given prior notice of the negotiations to sell or of the sale itself, and that the failure to give such notice violated Shell's rights under its lease. Shell's first notice was a letter from Herb C., postmarked March 7, 1985, informing Shell that rent in the future was to be paid to Herb C.

Shell brought this suit to preserve its rights under the lease, and now moves for summary judgment and for an order directing Herb C. to convey the property to it in exchange for payment of $198,250.

Defendants do not contest that Shell's rights should be honored. However, they contest both the power of the Court to award specific performance, and Shell's interpretation of the lease and its application to the events of this case.

*Specific Performance*

Both defendants rely on *Guaclides v. Kruse*, 67 N.J.Super. 348, 170 A.2d 488 (App.Div.1961) for the proposition that a court may not compel specific performance to enforce a lessee's right of first refusal. This is a misreading of *Guaclides*. That case concerned a landowner of a tract of land who had agreed to sell the entire tract to a single buyer. A lessee of a small portion of the tract attempted to enforce his right of first refusal with regard either to his small leasehold or to the entire tract. The owner then decided not to sell any of the property. The court held that the lessee's right of first refusal could not be applied to the entire property, and it further held that, as the owner had never offered to sell the leasehold parcel alone, the court could not compel him to do so.

In the present case, T & TR not only offered to sell the leasehold parcel; it actually did so, in violation of a right it had previously granted to Shell. There is thus no issue of compelling the owner to sell before us.

■ This case is not governed by *Guaclides* but by another line of cases entirely, which explicitly hold that specific performance of a right of first refusal is available against a purchaser. *Burleigh v. Mactier*, 108 A. 84, 85 (N.J. Chancery, 1919); *Schnakenburg v. Gibraltar Savings & Loan Ass'n*, 37 N.J.Super. 150, 117 A.2d 191, 195 (1955); *Abdullah v. Abdullah*, 359 F.2d 170, 171 (3d Cir.1966) (applying analogous Virgin Islands law).

Furthermore, under these cases, the purchaser takes on constructive notice of the

lessee's rights so long as the lessee is in open possession of the property, *Burleigh*, 108 A. at 85. Were the law otherwise, a purchaser could defeat the lessee's prior rights simply by preserving his ignorance of their existence. Here, not only was Shell in open possession; the deed to the property explicitly subjected the transfer of title to Shell's rights under the lease. Given these facts, Herb C.'s protests of ignorance are unavailing. Ordering specific performance against Herb C. does nothing more than enforce the agreement into which it voluntarily entered. The problem of compulsion discussed in *Guaclides* thus has no relevance to the facts of this case.

*The Application of the Right of First Refusal to this Transaction*

Both T & TR and Herb C. raise as a second defense the assertion that Shell's right of first refusal does not apply to this transaction. Shell's contract requires a "bona fide offer" to sell the leasehold to trigger its right of first refusal. Here, defendants assert, no "bona fide offer" was made.

Shell's leasehold is one of four contiguous lots, each owned by a separate legal entity. The four entities—three closely held corporations and one partnership—are owned by five individuals, members of two families. The ownership interest of each individual differs from entity to entity, and some of the individuals have no interest in one or more entity. Herb C. claims that it intended to buy the entire contiguous area from all four owners, and that it had no intention of buying the T & TR property alone. Thus, it asserts, it was not a "bona fide" buyer of the T & TR property.

T & TR joins Herb C. in the assertion that the deal was for all four lots. It asserts that the four sellers negotiated jointly for the sale of the property and that an allocation of the selling price among the four lots was made without regard to the real value of the property. The motive for the allocations, says T & TR, was to apportion the proceeds of the sale among the five individuals who are the owners of the four sellers, in accordance with an agreement among themselves. Thus the sum of $198,250, as represented on the deed, was not the price it was sold for at all. In actuality, says T & TR, some portion of the price allocated to the other three lots was paid in consideration for the T & TR lot. Thus there was a bona fide offer to sell all four lots, but no bona fide offer to sell the T & TR lot was ever made.

■ The inescapable implications of this argument are that Emily and Eunice Buchmuller perjured themselves when they signed the deed transferring title to Herb C. Enterprises; that Eunice Buchmuller further perjured herself when she signed the acknowledgment to the deed; that T & TR knowingly underpaid the New Jersey transfer fee, which is based on the sworn statement of consideration, N.J.S.A. 46:15–7; and that the principals of T & TR underreported their incomes for federal income tax purposes, and filed returns with the Internal Revenue Service reflecting the false swearings of the deed and its acknowledgment.

I reject the argument. T & TR may not repudiate the sworn statements it has made on the deed and its acknowledgment. *Tabloid Lithographers, Inc. v. Israel*, 87 N.J.Super. 358, 365–66, 209 A.2d 364 (Union Cty, Court, Law Div., 1965) (explaining the doctrine of estoppel by instrument), *see Suburban Golf Club of Elizabeth v. State Highway Comm'r*, 92 N.J.Super. 125, 137, 222 A.2d 301 (Law Div.1966) ("the grantor, and all those in privity with him, shall be estopped" from denying prior ownership of property as set forth in an instrument purporting to convey the property.) This was a real, arms-length transaction, in which title was conveyed at an agreed-upon and recorded price. Shell's right of first refusal was unquestionably triggered by these events.

■ Shell's right of recovery runs first against T & TR. T & TR is no longer in a position to make good on Shell's claim; but that does not extinguish the right. It runs next against Herb C., which is in privity with T & TR in regard to the sale of

the property, *Burleigh,* 108 A. at 85. Herb C. was not a party to the contract, nor is it a third-party beneficiary. It has no right to raise a contractual defense not available to the contracting party. Thus its assertion that it never intended to make or accept a bona fide offer for the T & TR property alone is of absolutely no moment. The offer was bona fide from the standpoint of T & TR; a conclusion on that issue puts an end to our inquiry.

Summary judgment will be awarded to Shell, and an order directing Herb C. Enterprises to offer to convey to Shell for a price of $198,250 the property it purchased from Trailer and Truck Repair Co., Inc. will issue. As there is no just reason for delay, I will direct the entry of this order as a final judgment, Fed.R.Civ.P. 54(b).