SHELL OIL COMPANY, a
Delaware corporation,

v.

TRAILER & TRUCK REPAIR CO., INC., a New Jersey corporation and Herb C. Enterprises, Inc., a New Jersey Corporation, and the Howard Savings Bank, a New Jersey corporation Defendant Third Party Plaintiff

v.

Joseph C. WOODCOCK, Jr., Third Party Defendant.

Appeal of HERB C. ENTERPRISES, INC., Appellant in No. 86–5760.

Appeal of TRAILER AND TRUCK REPAIR CO., INC. Appellant in No. 86–5789.

Nos. 86–5760, 86–5789.

United States Court of Appeals, Third Circuit.

Submitted United Third Circuit Rule 12(6) June 25, 1987.

Decided Sept. 10, 1987.

Andrew S. Polito, Francis T. Giulinao, Mark L. Czyz, Mattson, Madden & Polito, Newark, N.J., for Shell Oil Co.

Theodore I. Botter, Meyner and Landis, Newark, N.J., for Trailer & Truck Repair Co., Inc.

Dennis J. Drasco, Evans C. Agrapidis, Lum, Hoens, Abeles, Conant & Danzis, Roseland, N.J., for Herb C. Enterprises, Inc.

Before GIBBONS, Chief Judge, WEIS, Circuit Judge, and POLLAK, District Judge.[*]

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Trailer & Truck Repair Co., Inc. and Herb C. Enterprises, Inc. appeal from a summary judgment in favor of Shell Oil Company in Shell's action for specific performance of an option of first refusal to purchase real estate, 638 F.Supp. 1105. Our review of the District Court's interpretation of New Jersey law is plenary. Under New Jersey law, Shell is not, in the circumstances disclosed in the summary judgment record, entitled to specific performance of its option of first refusal. Thus the judgment appealed from will be reversed.

### I.

Four contiguous properties on Route 3 in Secaucus, New Jersey were owned by four separate entities, all controlled by members of the Buchmuller family. The entities, their shareholders or partners, and the percentage of ownership of each were as follows:

1. Trailer & Truck Repair Co., Inc.—Lot 1 Block 103

| | | |
|---|---|---|
| A. | Cheryl Buchmuller— | 42½% |
| B. | Vera Zitman— | 5% |
| C. | Eunice Buchmuller— | 42½% |
| D. | Harry Raphaelson— | 10% |

2. B & M Realty Associates—Lot 3 Block 103

| | | |
|---|---|---|
| A. | Vera Zitman— | 30% |
| B. | Eunice Buchmuller— | 30% |
| C. | Emily Buchmuller— | 30% |
| D. | Harry Raphaelson— | 10% |

3. Buchmuller Motor Transportation— Lot 2 Block 103

| | | |
|---|---|---|
| A. | Harry Raphaelson— | 10% |
| B. | Eunice Buchmuller— | 43¾% |
| C. | Vera Zitman— | 2½% |
| D. | Emily Buchmuller— | 43¾% |

4. Buchmuller Realty Co.—Lot 8 Block 103

| | | |
|---|---|---|
| A. | Harry Raphaelson— | 10% |
| B. | Cheryl Buchmuller— | 30% |
| C. | Vera Zitman— | 30% |
| D. | Eunice Buchmuller— | 30% |

Each of the four properties was encumbered by a lease. One of the four, that owned by Trailer & Truck Repair Co., Inc., was encumbered by a lease to Shell dated May 8, 1970, for use as a gasoline service station. The Shell lease, on a form prepared by Shell, granted Shell an option to purchase the property for $400,000. The Shell lease also provided in paragraph 9 that if Trailer & Truck Repair Co., Inc. "receives from a ready, willing and able purchaser, an acceptable bona fide offer to purchase, or makes a bona fide offer to sell to such a purchaser, the premises ...[,]" Shell could exercise a right of first refusal "at the price and on terms of the offer...."

By a contract dated April 4, 1984, the four Buchmuller entities agreed to transfer the properties to a single purchaser, Herb C. Enterprises, Inc., for a single purchase price of $2,500,000. The conveyance was to be made subject to the terms of the existing leases. It allocated the $2,500,000 among the four properties, attributing $198,250 to the Trailer & Truck Repair Co. property. The contract also provided, however:

18. Purchaser agrees that the allocation contained in Paragraph 3 may be modified by the sellers prior to closing and that purchaser agrees to be bound thereby.

The affidavits and depositions on file establish without dispute that the allocation of the purchase price among the four properties was made by the seller's attorney without input from the purchaser. The allocation was based upon the 1982 assessed valuations of the properties which, in turn, were based on Secaucus reassessments completed in 1976. Naturally, the allocation did not reflect the actual markets values, in 1984, of the four properties if sold separately.

[*] Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

It is similarly clear that the $198,250 allocation was substantially below the market value of the Trailer & Truck Repair Co. property. A 1983 reevaluation assessed the Trailer & Truck Repair Co. property at $520,800. Even the land, without improvements, was assessed in 1983 at $414,700. When the Buchmullers became aware of the 1983 reassessments, some of them proposed a reallocation, as permitted by the contract of sale. However, Vera Zitman, who had the smallest interest in the Trailer & Truck Repair Co. property, objected and threatened to block the sale.

The closing on the sale to Herb C. Enterprises, Inc. occurred on January 10, 1985. Trailer & Truck Repair Co., Inc. executed a deed transferring its property. The acknowledgment to the deed, sworn to by Eunice Buchmuller, recites that "the full and actual consideration paid or to be paid for the transfer of title is $198,250.00." This statement of consideration was included as the basis for calculation of the New Jersey Realty Transfer Tax. *See* N.J.S.A. 46:15–7. The shareholders of Trailer & Truck Repair Co., Inc. reported capital gains to the Internal Revenue Service based on a sales price of $198,250.

After the closing, Herb C. Enterprises, Inc. notified Shell that rent should in the future be paid to it. Shell contended that the conveyance violated its right of first refusal, and demanded a conveyance of the Trailer & Truck Repair Co. property for $198,250. When no such conveyance was made, it filed the instant suit. The district court granted Shell's motion for summary judgment.[1] Recognizing that Herb C. Enterprises, Inc. took subject to the Shell lease, the parties agreed in a consent order that Shell would pay $198,250 to Herb C. Enterprises, Inc., obtain title to the property, and retain title regardless of the outcome of any appeal. They further agreed that if the district court's judgment were ultimately affirmed, Shell would have no further obligation to the defendants. On the other hand, they also agreed that if the judgment ultimately entered were adverse

to Shell, Shell would make an additional payment to whichever defendant is adjudicated to be entitled to such payment. They agreed that the payment would be calculated as follows:

(1) If it is finally adjudicated that Shell is entitled to the property on any basis under which Shell would pay more than $198,250 but not more than $400,000, then the additional payment will be the difference between such adjudicated amount and $198,250.

(2) If it is finally adjudicated that Shell is not entitled to the property, or if any adjudication is rendered under which Shell would theoretically pay more than $400,000 for the property, then Shell will be deemed to have exercised its purchase option provided for in Article 8 of the Lease dated May 8, 1970, at the exercise price of $400,000. The purchase price option will be deemed to have been exercised on and as of November 6, 1986. Thereupon, the additional payment will be the difference between $198,250 and $400,000, to wit: $201,750.

Lastly, the parties agreed that the transfer of the property to Shell under the consent order was without prejudice to the defendants' contentions on appeal, specifically preserving the contention that the proper remedy for the alleged violation of the right of first refusal is rescission of the original transfer from the Trailer & Truck Repair Co., Inc. to Herbert C. Enterprises, Inc. However, in accordance with the agreement that Shell was to keep the property no matter what, they agreed that if rescission were found appropriate, "the party from whom the property shall be deemed transferred to Shell shall receive any additional payment."

Thus, at bottom, two matters must be resolved on this appeal: (1) whether the appropriate payment for the Trailer & Truck Repair Co. property is the $198,250 allocated as part of the overall $2,500,000 sales price, the $400,000 purchase option

---

1. Crossclaims between the various defendants remain unresolved. The district court entered an order pursuant to Fed.R.Civ.P. 54(b) that the

judgment in Shell's favor be entered as a final judgment. Thus we have appellate jurisdiction at this stage of the proceedings.

price, or some amount between these two; (2) assuming that some additional payment is appropriate, whether Herb C. Enterprises, Inc. or Trailer & Truck Repair Co., Inc. is entitled to that additional payment.

## II.

In *Guaclides v. Kruse*, 67 N.J.Super. 348, 170 A.2d 488 (App.Div.), *certif. denied* 36 N.J. 32, 174 A.2d 658 (1961) a New Jersey appellate court dealt with a factual situation which we find to be indistinguishable from that before us. Guaclides agreed to purchase two tracts of contiguous lands from Kruse for $110,000. After the contract was executed, Guaclides discovered that Kruse's predecessor in title had apparently granted to Farmers Oil Supply Co. a right of first refusal to purchase a portion of one of the tracts upon which Farmers was operating a gasoline service station. Guaclides filed suit, seeking an abatement of the purchase price because the right of first refusal rendered the title to part of the entire premises unmarketable. Kruse counterclaimed for specific performance, and filed a third party-complaint against Farmers for a declaration that Farmers did not have an enforceable right of first refusal. Farmers counterclaimed against Kruse and Guaclides for specific performance. The Chancery Division dismissed Farmers' counterclaim and granted specific performance of the Kruse-Guaclides contract without abatement.

On appeal, the Appellate Division, affirming the denial of Farmers' request for specific performance of the option, held that the holder of a right of first refusal on only a portion of a larger tract may not obtain specific performance of that option upon a contract to convey the whole property. However, the Appellate Division reversed the trial court's order for specific performance of the Kruse-Guaclides contract, finding that Farmers' option of first refusal could not so easily be defeated. Instead, Kruse was restrained from selling the portion of the property subject to the option without first affording Farmers an opportunity to exercise the option. 67 N.J. Super. at 359–60, 170 A.2d at 494–95. The court's holding regarding specific performance of the option is explicit:

> We hold that an option of first refusal as to a portion only of a tract may be exercised only if the owner determines to sell that portion for a separate consideration; and the attempted sale of the whole tract for a single price is no indication of an intention or desire to sell the portion alone. Therefore, Kruse may not be compelled by Farmers to sell to it the gas station part, merely because he has determined to sell all his property including that part for a unit price.

67 N.J.Super. at 359, 170 A.2d 488 at 494. In support of that holding, the court explained that an attempt to sell an entire tract is not a manifestation of an intent or desire to sell a smaller part, 67 N.J.Super. at 357, 170 A.2d at 493, and that any attempt to apportion the total consideration would involve the court in rewriting the parties' agreement. 67 N.J.Super. at 358–59, 170 A.2d at 494.

The district court attempted to distinguish *Guaclides* on the basis that the Trailer & Truck Repair Co., Inc. had actually agreed to sell its lot for a separate consideration. Such a distinction, however, is unsupportable on the summary judgment record. Neither the Trailer & Truck Repair Co., Inc. nor any of the other Buchmuller interests ever manifested any intention of disposing of the Shell gasoline service station lot separate and apart from the entire property. There were no negotiations with Herb C. Enterprises, Inc. for a consideration for anything other than the entire property. The $198,250 figure originated and was the result solely of a discretionary allocation of the $2,500,000 offer made by Herb C. Enterprises, Inc. for the entire property as a unit. There is no recorded evidence from which it could be inferred that the owners of Trailer & Truck Repair Co., Inc. would have agreed to a $198,250 price if they were not being paid a total of $2,500,000 for all their interests. Moreover, the district court's distinction is inconsistent with the reasoning of the *Guaclides* court, which focussed not on whether the lots were separately titled, but on whether the offer was for a larger tract,

including the portion subject to the first refusal option.

Although its reasoning is not entirely clear in this respect, the district court appears to have concluded that the *Guaclides* rule should not govern, and Shell should receive a $201,750 windfall, because Trailer & Truck Repair Co., Inc., by putting $198,250 in the acknowledgment to the deed, paid realty transfer and federal incomes taxes based on that sum. We are not persuaded that this should have any effect on the outcome. Any reallocation of the $2,500,000 purchase price among the four selling entities would have no effect, so far as this record discloses, upon the aggregate realty transfer tax paid to New Jersey. As for the capital gains tax, there is no evidence in the summary judgment record that the aggregate federal income tax paid would have been greater or less if a different allocation of the total consideration had been made. Moreover, the appropriate method of ensuring compliance with the tax laws is oversight by the tax authorities, not enforcement of Shell's right of first refusal at a bargain price. *Pantry Pride Enterprises v. Stop & Shop Cos.*, 806 F.2d 1227, 1231 (4th Cir.1986).

■ Shell urges in support of the summary judgment that it should have the benefit of the rule of estoppel by deed. *See Suburban Gold Club of Elizabeth v. State Highway Comm'r*, 92 N.J.Super. 125, 222 A.2d 301 (Law Div.1966). While estoppel by deed can operate to prevent a grantor from denying a grantee's title or from denying that there was adequate consideration, Shell has pointed to no case—and the court has located none—in which a grantor has been estopped from proving that there had been additional consideration beyond that stated in the deed. Indeed, there are cases from other jurisdictions holding precisely the opposite. *Whitaker v. McMinn County*, 491 S.W.2d 844 (Tenn.1973); *Home Financers' Bldg. & Loan Ass'n v. Michael*, 117 Pa.Super. 391, 177 A. 503 (1935).

Moreover, there is no evidence in the record that Shell relied to its detriment on the statement of consideration in the deed.

This is not surprising, since Shell was not a grantee at the time. It is true that some courts have stated that detrimental reliance is not an element of estoppel by deed. *See, e.g., McBride v. Hutson*, 302 S.W.2d 456 (Tex.Civ.App.), *rev'd on other grounds*, 157 Tex. 632, 306 S.W.2d 888 (1957); *In re Solomon*, 40 F.Supp. 62 (E.D.Pa.1941); *see generally 3 American Law of Property* § 15.18 (A.J. Casner ed. 1952). We know of no reason for such a doctrine. In the ordinary case between a grantor and a grantee, detrimental reliance is so obvious that courts may not bother to mention it, but this is a poor reason for concluding that detrimental reliance is irrelevant to estoppel by deed. We acknowledge that there are substantive differences between estoppel by deed and equitable estoppel, *see, e.g., Equitable Royalty Corp. v. Hullet*, 206 Okla. 233, 243 P.2d 986 (1952), but do not see why a party who has not detrimentally relied should be able to invoke either doctrine.

■ In the absence of authoritative guidance, we conclude that the New Jersey courts would follow those cases which hold that detrimental reliance is an element of estoppel by deed as well as an element of equitable estoppel. *See, e.g., Dominex, Inc. v. Key*, 456 So.2d 1047 (Ala.1984); *Duke v. Hopper*, 486 S.W.2d 744 (Tenn.Ct. App.1972); *see generally 31 C.J.S. Estoppel* § 10 (1964). We draw support for this conclusion from *National Premium Budget Plan Corp. v. National Fire Ins. Co.*, 106 N.J.Super. 238, 254 A.2d 819 (App. Div.), *certif. denied*, 54 N.J. 515, 257 A.2d 113 (1969) (adopting reasoning of *Reiser Lumber & Millwork Co. v. Simonelli*, 98 N.J.Super. 335, 237 A.2d 303 (Law Div. 1967)). These cases hold that a party attempting to invoke an estoppel based on the filing of a business name certificate must prove detrimental reliance.

Shell also relies on the doctrine of judicial estoppel, which prevents a party from arguing contradictory factual positions in court. *See Tabloid Lithographers, Inc. v. Israel*, 87 N.J.Super. 358, 209 A.2d 364 (Law Div.1965). However, since Trailer & Truck Repair Co., Inc. never stated to a

court that the complete consideration for its lot was $198,350, judicial estoppel has no relevance to this case.

Shell's final argument is that it should be given specific performance because the willingness of the Buchmuller's and Herb C. Enterprises, Inc. to close the sale without notice to Shell suggests unclean hands. We fail to see, however, why the failure to give Shell notice should result in the enlargement of its rights under the terms of the lease. Those rights are determined by *Guaclides*. Notice would not have afforded Shell any basis for avoiding the *Guaclides* holding.

### III.

The *Guaclides* court held that although the holder of an option to first refusal on a portion of a property cannot compel specific performance of the option upon a contract to sell the entire property, the option holder is entitled to an injunction against the sale of the land on which he has an option. 67 N.J.Super. at 359–60, 170 A.2d at 495. It also noted that "where title has already passed to a transferee, with actual or constructive notice of the option," courts order a reconveyance of the optioned portion to the seller. 67 N.J.Super. at 359, 170 A.2d at 494. *See, e.g., C & B Wholesale Stationery v. S. DeBella Dresses, Inc.*, 43 App.Div.2d 579, 349 N.Y. S.2d 751 (1973).

Relying on this observation, Trailer & Truck Repair Co., Inc. argues that the proper remedy for the violation of Shell's right of first refusal is a reconveyance to itself of the property subject to the option. Trailer & Truck Repair Co., Inc. further argues that under the consent order, if such a remedy is imposed, the property will be deemed transferred to Shell from Trailer & Truck Repair Co., Inc. and it will be entitled to any additional payment made by Shell.

Trailer & Truck Repair Co., Inc. does not make this argument with good grace. The purpose of the reconveyance remedy is to protect the option holder's rights. Shell, if it desired reconveyance to Trailer & Truck Repair Co., Inc., might well be entitled to

this remedy. However, since the parties have agreed that Shell is to have title to the optioned property regardless of the outcome of these proceedings, Shell has absolutely no interest in a remedy of reconveyance. We do not believe that the New Jersey courts would permit the seller to invoke a remedy designed to protect the holder of the option. We therefore reject the contention by Trailer & Truck Repair Co., Inc. that reconveyance is appropriate in the circumstances of this case. Since this is the only plausible argument for an additional payment from Shell to Trailer & Truck Repair Co., Inc., it follows that any such payment must be made to Herb C. Enterprises.

### IV.

Having determined that Shell may not obtain specific performance of its right of first refusal at $198,250 and that Herb C. Enterprises is entitled to any additional payment that is to be made, the only question remaining is how to properly determine the amount, if any, of such additional payment. Only two methods suggest themselves as arguably appropriate: (1) a determination of the fair market value of the Trailer & Truck Repair Co. property or (2) a determination of the portion of the $2,500,000 purchase price which, based on the percentage of the fair market value of the entire package represented by the Trailer & Truck Co. property, should be allocated to the Trailer & Truck Co. property. *See Pantry Pride*, 806 F.2d at 1232.

Under either method, "Shell would theoretically pay more than $400,000 for the property." Indeed, based on the facts in the record, it seems clear that either method would produce a fair value in excess of $400,000. Accordingly, pursuant to the consent order, Shell is deemed to have exercised its purchase option at the exercise price of $400,000 and is to pay $201,750 (the difference between $400,000 and $198,250) to Herb C. Enterprises, Inc.

### V.

The summary judgment in Shell's favor must be reversed. Because the parties

have entered into a consent decree under which Shell's purchase option has been recognized, the case will be remanded for the entry of an order directing Shell to pay $201,750 to Herb C. Enterprises, Inc.