NEW ATLANTIC GARDEN, INC., Respondent, *v.* ATLANTIC GARDEN REALTY CORPORATION, Appellant.

First Department, May 5, 1922.

Landlord and tenant — provision in lease of portion of premises that in event of contemplated sale " of the said premises during the demised term " tenant was to have first right to purchase construed to refer to demised premises only — landlord enjoined from selling demised premises without giving tenant first right to purchase — landlord not required to convey demised property to tenant upon having determined to sell entire property.

A provision in a lease of a portion of certain premises to the effect that in the event of a contemplated sale " of the said premises during the demised term " the tenant was to have the first right to purchase the same, will be construed not to include other property adjoining but to refer to the demised property only. Hence, the landlord was properly enjoined from selling the demised property without giving the tenant the first right to purchase the same, but the fact that the landlord attempted to sell the entire property does not warrant a decree that he convey the demised property to the tenant.

GREENBAUM, J., dissents in part, with memorandum.

APPEAL by the defendant, Atlantic Garden Realty Corporation, from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of New York on the 9th day of November, 1920, upon the decision of the court rendered after a trial at the New York Special Term, as resettled by an order entered in said clerk's office on the 29th day of November, 1920, excepting so much of the judgment as provides that the first and third causes of action contained in the amended complaint be dismissed upon the merits.

*Arnstein & Levy* [*David Leventritt* of counsel; *Francis M. Scott* and *Reuben Rodecker* with him on the brief], for the appellant.

*Hobart S. Bird* [*Samuel Seabury* of counsel], for the respondent.

MERRELL, J.:

The defendant, Atlantic Garden Realty Corporation, is the owner of a parcel of real property, being Nos. 50, 50½ and 52 Bowery, borough of Manhattan, New York city, and having a frontage of seventy-five feet on said street and extending westerly about two hundred feet to Elizabeth street, where it has a frontage of seventy-four feet ten and three-fourths inches, the Elizabeth street numbers of said property being 22, 24 and 26. The southerly part of the property is occupied by a moving picture theatre forty-nine feet six and three-fourths inches in width on the Bowery and extending two hundred feet westerly to Elizabeth street, where it has a frontage of fifty feet one and three-fourths inches. The Bowery frontage is Nos. 50 and 50½, and the Elizabeth street frontage is Nos. 22 and 24 on said last-mentioned street. The entrance to the theatre is at the Bowery end and on the southerly side, the stage occupying all of the westerly end of the theatre on Elizabeth street, except a fireproof passage on the southerly side thereof leading from the auditorium of the theatre to Elizabeth street. The entrance to the theatre is twenty-seven feet in width and extends back to the auditorium from the Bowery, a distance of forty-eight feet three inches. Of equal depth to the theatre entrance and on the northerly side thereof is a store forty-eight feet three inches in depth, and having a frontage of eighteen feet nine inches on the Bowery. Encroaching upon the northerly side of the store is a stairway leading from the Bowery by which access is had to the upper floors of the theatre building and also to the upper stories of the building adjacent to the theatre property, which is also owned by the defendant, the ground floor being used as two stores, being No. 52 Bowery. These stores are of equal depth to the theatre entrance and the store being No. 50½ Bowery. Back of the stores at No. 52 Bowery are men's and women's toilets used by patrons of the theatre and opening into the auditorium thereof. These stores at No. 52 Bowery and the toilets in the rear are contained in a three-

**406** New Atlantic Garden, Inc., *v.* Atlantic G. R. Corp.

First Department, May, 1922.  [Vol. 201

story building having a frontage on the Bowery of twenty-five feet three and one-fourth inches, and a total depth of sixty-seven feet six and three-fourths inches. The entrance of the theatre and also the store forming No. 50½ Bowery are contained in a three-story building forty-nine feet six and three-fourths inches in width on the Bowery, as aforesaid, and forty-eight feet three inches in depth. Occupying the northwesterly part of defendant's premises facing on Elizabeth street is a six-story brick building of about sixteen feet frontage on Elizabeth street, and running along the southerly side thereof adjacent to the moving picture theatre building is a fireproof passageway eight feet eleven inches in width. This passageway extends from Elizabeth street easterly to an open court or lane extending from the rear of said six-story brick building to the three-story building fronting on the Bowery.

Prior to April, 1919, certain individuals entered into negotiations with the defendant with a view of leasing that part of defendant's premises known as 50 Bowery and extending through to Elizabeth street, and which had theretofore been used as a moving picture theatre. It was planned that these individuals should organize a corporation and take over the premises, which were then under lease to others who were operating therein a moving picture enterprise. It was suggested that the plaintiff should be organized and that it should take an assignment of the existing lease of the moving picture premises and should make substantial improvements to the building and take a new lease thereof. On July 23, 1919, the plaintiff corporation, having been organized, entered into a lease with the defendant whereby the latter leased to the plaintiff the premises known as 50 Bowery, and more particularly described in the 46th paragraph of the lease, said premises to be used and occupied as a moving picture theatre. The description contained in the lease of the demised premises was as follows:

" *Forty-sixth:* The premises hereby leased are as follows: 50 x 200 ft. block 202, lot Nos. 23, 8 and 9, with the exception of the following portions of the building 50 Bowery known as Lot No. 23 which are not included in this lease, to wit, the lunch room store at the north end; the hallway and stairway to the upper floors (excepting that the tenant shall have the right to use such stairway and hallway for ingress and egress); the entire second floor and the entire third floor excepting that the tenant may occupy the space now occupied as a moving picture booth and film winding room, and the space on the second floor now occupied by the tenant as an office; it being understood however that such space shall be used solely for office purposes. The tenant is to have the use of that portion of the cellar in the demised premises which is necessary

only for its steam boiler and the landlord is to have possession of and access at all times to the rest of the cellar."

The lease was for a ten-year term, to commence July 1, 1919, and to end June 30, 1929. The annual rental reserved was $10,300, payable in equal installments of $1,030 in advance on the first day of September to the first day of June, inclusive, in each year during the demised term. The lease also provided that during its existence the plaintiff, tenant, should have the right to use the passageway through the building known as No. 26 Elizabeth street and extending from the yard southerly to said street. By the 48th paragraph of said lease it was provided as follows:

" *Forty-eighth:* In the event of a contemplated sale of the said premises during the demised term, the landlord agrees to give to the tenant a notice in writing at least ten days before the contemplated sale of the substance of the terms on which it is proposed to be made, which notice shall be by registered mail directed to the tenant at the said premises; and thereupon within ten days from the date of the mailing of said notice the tenant shall have the right to purchase said premises upon the terms and conditions proposed and on the failure of the tenant to exercise such option within the time aforesaid, the option hereby granted to the tenant shall be and stand cancelled."

The said lease also provided, in the 38th paragraph thereof, that the landlord might cancel the lease at any time during the second or third years of the term upon payment to the tenant of $10,000, and during the fourth and fifth years of the term upon payment to the tenant of $7,500, and during the sixth, seventh, eighth and ninth years of the term upon payment to the tenant of the sum of $5,000, and during the tenth year of the term at the *pro rata* rate of $3,000 per annum for the number of months that might still remain of the said year from the time that said lease was surrendered or canceled. In connection with the exercise of the right to cancel said lease it was provided that all the alterations and improvements to the demised premises should belong to the landlord, together with all chairs contained in the premises at the time of the lease, the tenant to satisfy all chattel mortgages and conditional bills of sale upon any of said personal property.

Evidently recognizing that such right of the landlord to cancel the lease would leave the tenant inadequately secured against loss by reason of its large investment, and that the payment of said moneys provided for upon cancellation of the lease would not adequately compensate the tenant for its loss, at the time of the execution of the lease the defendant, at plaintiff's request, executed the following collateral agreement: -

**408** New Atlantic Garden, Inc., *v.* Atlantic G. R. Corp.

First Department, May, 1922. [Vol. 201

" In Order to Induce the New Atlantic Garden, Inc. to enter into the lease with the Atlantic Garden Realty Corporation, of the premises No. 50 Bowery, New York City, for the term of ten years from the 1st day of July, 1919, the undersigned does hereby agree that as long as it is the owner of the said premises, it covenants not to avail itself of the cancellation clause contained in paragraph Thirty-eight of the said lease."

Notwithstanding the various provisions of the lease hereinbefore quoted and of said collateral agreement, the evidence disclosed that on the day before the execution of said lease and of said collateral agreement, the defendant had, in fact, contracted with one Salamone for the sale of, not only the theatre property, but the adjacent property to the west thereof owned by the defendant and occupying No. 52 Bowery and No. 26 Elizabeth street. The fact that the defendant had entered into such contract to sell was studiously concealed from the plaintiff at the time of the execution of said lease. Notwithstanding the defendant's covenant, as an inducement to the plaintiff to enter into said lease, that it would not, as long as it remained the owner of the premises, avail itself of the cancellation clause contained in the lease, two days after the date of the execution of the lease the defendant addressed to the plaintiff the following communication:

" New Atlantic Garden, Inc.,
" 50 Bowery
" New York City.

" Gentlemen.— Pursuant to the provisions of the 48th clause of a certain lease bearing date July 23, 1919, entered into between Atlantic Garden Realty Corporation, as landlord, and New Atlantic Garden, Inc., as tenant, of the premises 50 Bowery, in the Borough of Manhattan, City of New York, more particularly described in paragraph 46 of said lease, you are hereby notified that the landlord contemplates a sale of the premises 50, 50½ and 52 Bowery and 22, 24, 26 Elizabeth Street, Borough of Manhattan, and that the substance of the terms at which said sale is proposed to be made is as follows:

" The property is contemplated to be sold at the price of One hundred and forty thousand ($140,000) Dollars, $5,000 of which is to be paid on the signing of the contract of sale; $20,000 in cash on the delivery of the deed on September 2, 1919; $90,000 by the purchaser accepting the premises subject to a first mortgage in that amount with interest at the rate of five per cent per annum, and $25,000 by the purchaser executing a purchase money bond and second mortgage, payable as follows: $1,500 on the 1st day of March, 1920 and a like sum of $1500 semi-annually thereafter until

the 1st day of March, 1924 and the balance of the principal sum on September 1, 1924, with interest at the rate of six per cent per annum payable semi-annually; subject to existing leases and to all exceptions contained in title policy of the Title Guarantee & Trust Co. No. 73231, and to Zoning Resolution, and to state of facts shown on a survey of said premises dated July 25, 1919.

" ATLANTIC GARDEN REALTY CORPORATION,
" [SEAL]    By Isaac Lowenfeld, *Pres.*"

The evidence also disclosed that the contract between the defendant and Salamone was expressly made subject to the right of the plaintiff under its lease to purchase the demised property if it exercised its option, and in the event plaintiff should exercise its option, then the contract, by its terms, was declared void and the purchaser was to be repaid the sum of $5,000 which he paid to the defendant before the execution of said contract of sale. The purchaser, Salamone, fully understood the plaintiff's rights in the premises. The contract to Salamone was the culmination of several days negotiation between the defendant and him. With the evident purpose of forestalling the plaintiff in taking advantage of the option accorded· to it by the terms of the lease of the first right to purchase the premises, the defendant gave the foregoing notice of its intention to sell defendant's entire holdings, which included the demised premises. Promptly upon receipt of the defendant's notice of July twenty-fifth, the plaintiff wrote the defendant to the effect that such notice was insufficient and inadequate and was not in compliance with the 48th clause of said lease, *first*, that the notice did not state the price at which it was contemplated that the demised premises were to be sold, but only the price at which the contemplated sale of the whole premises was to be made; *second*, that the notice failed to state the time or term of the proposed first mortgage of $90,000 which was to be assumed as a part of the purchase price; also, calling attention of the defendant to the fact that it had refused to give plaintiff the name or disclose the identity of its alleged purchaser so as to enable the plaintiff to ascertain such particulars. The plaintiff, in said letter, requested information and further notice in compliance with the 48th clause of said lease. No attention whatever was paid to this demand of the plaintiff. The evidence disclosed that one of the terms of the contract of sale between the defendant and Salamone was with reference to the $90,000 mortgage upon the premises then about to fall due, that the defendant would guarantee, in the event the mortgage should be called, that an extension would be granted or a new mortgage would be procured to run three years at an interest rate of five and one-

**410** New Atlantic Garden, Inc., *v.* Atlantic G. R. Corp.

First Department, May, 1922. [Vol. 201

half per cent per annum. This, of course, was a very important item of the proposed sale and was not divulged to the plaintiff by the defendant, and was particularly important in view of the statement in plaintiff's letter to the defendant in response to the latter's notice, with reference to the time or terms of the proposed first mortgage of $90,000, that without knowing with reference thereto the plaintiff would be unable to say whether it would make the purchase on the terms proposed or not. The plaintiff took the matter up verbally with the defendant and sought to obtain full information as to the terms of sale, but was refused any further particulars. Various conferences were had between the parties, the defendant finally offering after the ten days allowed for the exercise of the option, to sell to the plaintiff the whole plot which it had contracted to sell to Salamone, which offer plaintiff accepted after defendant's refusal to sell it the demised premises, but, in the end, the defendant refused to make such conveyance. The offer of the plaintiff in this respect was to take the entire premises upon the same terms as those agreed upon between the defendant and Salamone.

Upon such facts the plaintiff brought the present action. In its complaint the plaintiff sought three forms of relief: *First*, that the contract between the parties be reformed so as to include therein a clause to the effect that the defendant would not sell or otherwise dispose of the demised premises or any part thereof during the demised term, without limiting the right of the grantee or his assigns to cancel plaintiff's lease; *second*, enjoining and restraining the defendant from selling, assigning, transferring or otherwise disposing of the demised premises, except to the plaintiff, and compelling the defendant to specifically perform its agreement with the plaintiff and sell the demised or the demised and adjoining premises, to the plaintiff, pursuant to the 48th paragraph of said lease.

Upon the trial all of the plaintiff's claims were either withdrawn or were dismissed by the trial court, save for the specific performance of defendant's agreement to sell the demised premises to the plaintiff, and that the defendant should be restrained from selling, assigning, transferring or otherwise disposing of the demised premises, except to the plaintiff. Both of these reliefs asked for by the plaintiff were granted by the trial court in the judgment from which the defendant has appealed.

It is the contention of the appellant that the 48th clause of the lease related to the entire premises owned by the defendant, being Nos. 50, 50½ and 52 Bowery, and extending through to Elizabeth street, and that the defendant fully complied with the provisions of the 48th clause of said lease in notifying plaintiff of its intention to

dispose of the entire property, and that the failure of the plaintiff to avail itself of the opportunity to purchase the same prevents the granting of any relief to the plaintiff in this action.   It seems to me that the appellant is clearly wrong in such contention.   The 48th clause of the lease provided that, in the event of the contemplated sale " of the said premises during the demised term," the landlord was to give to the tenant written notice of at least ten days before the contemplated sale, of the substance of the terms on which it was proposed to make such sale, and that within ten days after the date of the mailing of such notice to the tenant it should have the right to purchase such premises upon the terms and conditions proposed.   By no possible interpretation could the parties be said to have contemplated by such provision any other premises than those demised to the tenant under said lease.   The words " demised term " can refer to nothing more than the term for which the premises covered by the lease were demised.   The lease relates to no other property than that demised and this plaintiff was interested in none other than the theatre property leased to it.

It is urged on the part of the appellant that the occupant of the store which encroached upon the demised premises had rights which could not be invaded, but, as pointed out by the trial court, the conveyance of said premises could very properly have been made subject to the rights of said store tenant during the remainder of his term.   The same is true with reference to the stairway by which access was gained to the upper stories on the Bowery front.   The conveyance could very well have provided for the use of such stairway by the occupants of the rooms over the stores at No. 52 Bowery.

It seems to me that the court very properly held that the notice given by the defendant of its proposed sale was a mere pretense and not a compliance with the requirements of paragraph 48 of the lease.   The court held, inasmuch as the owner had seen fit to sell the whole premises, that equitably, under the terms of the lease, the plaintiff should have the right to avail itself of the option contained therein and take title to the demised premises.   The court held that equitably this could be done by apportioning the fair value of the demised premises to the amount at which the defendant proposed to sell its property as a whole.   Expert evidence was given by both the plaintiff and the defendant upon the trial as to the value of the demised premises separate from appellant's adjacent premises to the west, the defendant's witness testifying that the demised premises were worth $120,000, whereas, the plaintiff's expert witness placed the value of said demised premises at $92,500. The court found that the value of said premises was $98,500, and the decree appealed from provided that the plaintiff, upon the

delivery or tender of a conveyance of the property, should pay to the defendant the purchase money, to wit, $98,500, by paying in cash the difference between the amount of the mortgage upon the whole property and the $98,500 fixed as the value of the demised premises.

While there is much to be said in support of the equity of the decree appealed from requiring the defendant to specifically perform, still I am of the opinion that the defendant cannot be compelled, unless it so desires, to sell a part of its property. So far as appears it has not determined to dispose of the demised premises separately from the property as a whole, and I do not think the fact that it attempted to sell the whole should be taken, within the terms of the lease, as a manifestation on the appellant's part of an intention or desire to sell the demised premises so as to give the plaintiff the right to exercise the option to purchase the same.

I am, however, of the opinion that the trial court very properly enjoined the defendant from selling said demised property to any one except the plaintiff without according to the plaintiff the first right to purchase the same.

The judgment appealed from should be modified by striking from said decree the provisions thereof requiring the defendant to specifically perform its contract and to convey said premises upon the terms as provided in said decree. The judgment appealed from should be affirmed to the extent of restraining the defendant from making any sale of the premises demised to the plaintiff until the defendant shall have first given the plaintiff a notice of the substance of the terms of the contemplated sale of said premises and according to the plaintiff the first right to purchase the same pursuant to the provisions of the 48th paragraph of the lease.

As so modified, the judgment should be affirmed, with costs to the respondent.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concur; GREENBAUM, J., dissents in part.

GREENBAUM, J. (dissenting in part):

I dissent from so much of the opinion of the majority of this court which construes the 48th paragraph of the lease as being only applicable to that portion of the premises owned by the defendant which is in the southerly portion thereof and which embraces 50 feet by 200 feet.

I am of the opinion that the lessee only acquired the right to purchase under its option the entire plot of 75 feet by 200 feet. Paragraph 48 does not in so many words speak of a contemplated sale of the demised premises to the plaintiff. What it does say is

that " in the event of a contemplated sale  of  the *said* premises during the *demised term*, the landlord agrees to give to the tenant," etc.   (Italics mine.)

An analysis of the lease itself would indicate to my mind that the parties never intended a contemplated sale of a portion of the entire premises.   The defendant leased to the plaintiff that portion of its property upon which there was a moving picture theatre.   The lessee was only interested in the theatre, which, however, did not cover the entire southerly fifty feet of the entire plot.   The lease expressly excluded from the fifty-foot plot a portion thereof upon which there is a small building with a store used as a lunch room and known as No. 50½ Bowery, which was leased to a third party. It also excluded the hallway and stairway to the upper floors of that building and also the cellar thereof.   On the remaining northerly twenty-five feet of the plot there were two buildings, one fronting on the Bowery, known as No. 52 Bowery, and the other an old building in the rear, known as No. 26 Elizabeth street, with a large intervening open yard space.   The lease expressly provides that the " landlord does hereby agree during the existence of this lease to allow to the tenant a passageway to the building known  as No. 26 Elizabeth Street."

A diagram which forms a part of the papers on appeal shows four exits from the theatre into the yard, each within the northerly portion of the premises.

The lease also provides that there shall be an opening between the two buildings facing the Bowery.   There are other minor reservations or easements.

Reading all the reservations and easements in the lease there seems to me to be a clear indication that when the parties referred to a contemplated sale in paragraph 48 it necessarily had reference to the entire plot, since the southerly fifty-foot portion could not be used under the terms of the lease excepting in connection with the remaining northerly twenty-five-foot portion.

It is significant too that the prayer in plaintiff's amended complaint asks the court to compel the defendant specifically to perform its agreement with the plaintiff and to " sell the *demised, or the demised and adjoining premises* to the plaintiff pursuant to the 48th paragraph of the said lease."   (Italics mine.)

Order modified as directed in opinion and as so modified affirmed, with costs to respondent.   Settle order on notice.