## 38516. RADIO WEBS, INC. v. TELE-MEDIA CORPORATION et al.

HILL, Presiding Justice.

Radio Webs, Inc., sued to enjoin the sale of WEBBS Cable TV, Inc., by its owners, the Stocks family,[1] to Tele-Media Corp. In its suit against the Stocks and Tele-Media, plaintiff sought to enforce paragraph 17 of its contract with the Stocks giving it a right of first refusal on the sale of WEBBS Cable TV. The trial court denied a temporary restraining order, and, upon stipulation by plaintiff that the controlling issue in the case was the construction of the contract, also denied an interlocutory injunction. Plaintiff appeals.

On August 1, 1980, plaintiff had purchased from the Stocks family all of the issued common shares of New Echota Broadcasting, Inc., owner and operator of a Calhoun radio station. The purchase agreement as to the radio station contained the paragraph here in dispute granting plaintiff a right of first refusal to purchase WEBBS Cable TV, which, in pertinent part, is quoted below:

"17. *Right of First Refusal to Purchase Stock or Assets of WEBBS Cable TV, Inc.* Sellers warrant that Sellers are presently the owners of all of the issued and outstanding capital stock of WEBBS Cable TV, Inc., a Georgia corporation ('WEBBS'), which is the owner and operator of a cable television system in Calhoun, Georgia. As part of the consideration for the transactions contemplated herein, Sellers hereby grant to Buyer the following right of first refusal to purchase the business and all or substantially all of the assets ('the assets of WEBBS') or the stock of WEBBS ('the stock of WEBBS'), said right of first refusal to continue for a period of twenty (20) years from and after the Closing Date: Sellers agree that if, at any time during said twenty-year period, Sellers receive an offer to purchase the stock of WEBBS or WEBBS receives an offer to purchase the assets of WEBBS, Sellers or WEBBS, as appropriate (the 'Offeree'), shall offer to sell the stock of WEBBS or the assets of WEBBS to Buyer upon the following terms and conditions: The Offeree shall deliver a notice in writing to Buyer of Sellers' or WEBBS' desire to sell the stock of WEBBS or the assets of WEBBS, which notice shall contain a signed copy of the bona fide offer to purchase the same, stating *the price and other terms and conditions* of the offer and the full name and address of the proposed purchaser. Buyer or its assignee shall have thirty (30) days from the receipt of the notice within which to

---

[1] Emma Jo Stocks, William Bruce Stocks, Sandra Elaine Stocks Sloan and William E. Stocks.

elect to purchase either the stock of WEBBS or the assets of WEBBS, as the case may be, *for the price shown in the bona fide offer and upon the same terms and conditions set forth in the bona fide offer.* In the event that such an election is made to purchase the stock of WEBBS or the assets of WEBBS by Buyer or its assignee, Buyer or such assignee shall deliver written notice of such election to the Offeree, designating the closing date of the purchase not more than thirty (30) days thereafter. If no notice is received by the Offeree from Buyer or its assignee within the said thirty-day period, Buyer shall be deemed to have consented to the sale of the stock of WEBBS or the assets of WEBBS to the party which made the bona fide offer in accordance with the terms thereof." (Emphasis supplied.)[2]

On November 17, 1981, the Stocks delivered a letter purporting to activate plaintiff's right of first refusal under this purchase agreement. The letter, which is included in the record, makes clear that the proposed sale included more than just the sale of WEBBS Cable TV to Tele-Media: "As you will note, the sale contemplates a 'package-transaction' involving in addition to the stock of Webbs Cable TV, Inc., the stock of Fairmont Cable TV, Inc., the office building presently owned by Emma Jo Stocks and the personal home of Ms. Stocks. It should be further noted that the transactions contemplated herein, *are not severable* and consist of the various employment agreements, consultancy agreements, non-competition agreements, and other aspects of the transaction as set forth in the offer. The agreement between yourselves and the stockholders provide for acceptance within thirty days of this date." (Emphasis supplied.)[3]

Within thirty days plaintiff notified the Stocks that it considered such an offer to be a violation of its contractual right of first refusal and that Tele-Media's offer was incomplete and would not be binding if accepted. The Stocks indicated their intention to

---

[2] A "right of first refusal" is not an option contract; it cannot be "accepted" by its holder and it is not required that the price and other terms be specified. A party who grants a right of first refusal promises the purchaser of that right that the promissor will make an offer to sell to the purchaser, or afford the purchaser an option to buy, the property which is the subject of the right, at the price and on the terms stated when the right is granted, or at the same price and upon the same terms as the promissor is willing to accept from a third party. Where no price is stated when the right is granted, the offer of the third party supplies the terms under which the right of first refusal may be exercised. 1A Corbin on Contracts § 261 (1963).

[3] The defendants contend that this appeal should be dismissed because the contract between them was not made part of the record until after the judgment below. The terms and conditions of Tele-Media's offer to the Stocks are adequately presented in this letter for purposes of this appeal.

accept Tele-Media's offer after plaintiff's 30-day contract period expired. Plaintiff then filed this action to enjoin the consummation of the sale of WEBBS Cable TV to Tele-Media by the Stocks.

The trial court denied a temporary restraining order, and upon plaintiff's stipulation "that in view of the court's construction of the contract, the presentation of additional evidence and argument at an interlocutory injunction hearing would serve no purpose . . .," denied an interlocutory injunction "based on its construction of the contract." Plaintiff appeals. The defendants urge that because the sale to Tele-Media was concluded following denial of the interlocutory injunction, this appeal is moot. The question of mootness will become clearer after discussion of the merits and will be considered in the second division of this opinion.

1. Plaintiff argues on appeal that Tele-Media's offer to the Stocks does not satisfy plaintiff's right of first refusal under its agreement with the Stocks because the proposed sale to Tele-Media includes more than merely the assets or stock of WEBBS Cable TV, which is the sole subject matter of the right of first refusal.[4]

The contractual right of first refusal contemplates the sale of the assets or stock of WEBBS Cable TV. The Stocks and Tele-Media argue that their proposal fits within the broad parameters of the phrase "other terms and conditions" emphasized in the quoted portion of paragraph 17 of the agreement, while plaintiff asserts that this language must necessarily be limited by the context of the agreement itself to the sale only of WEBBS Cable TV.

Code Ann. § 20-702 provides that "[t]he cardinal rule of construction is to ascertain the intention of the parties. . . ." It is manifestly clear that both the Stocks and the plaintiff contemplated only the sale of the assets or stock of WEBBS Cable TV when the right of first refusal was negotiated. The right of first refusal contained no specified price. The parties agreed that the price and other terms and conditions, such as possible deferred payments and security for those payments, were to be supplied by the offer of a third party, here Tele-Media. To now add "terms and conditions" such as those embodied in the Tele-Media offer that are wholly unrelated to the purchase of WEBBS Cable TV does not satisfy plaintiff's right of first refusal and is not a bona fide offer within the meaning of paragraph 17 of the agreement. See *Illges v. Dexter,* 77 Ga. 36 (b) (1886).

---

[4] We do not here consider plaintiff's arguments that the other agreements for employment, etc., are too vague because we are not considering the Tele-Media proposal itself which was untimely added by amendment. See note 3, supra.

This problem arises most frequently in leases, where the lessee has a right of first refusal entitling the lessee to purchase the leased premises, and the lessor-owner receives an offer to purchase a larger tract including the leased premises. "All the cases agree that the lessee can obtain an injunction forbidding the lessor from selling the demised property to anyone except the lessee. New Atlantic Garden v. Atlantic Garden Realty Corp. (1922) 201 App Div 404, 194 NYS 34 (affirmed without opinion in (1923) 237 NY 540, 143 NE 734); American Oil Co. v. Eastern Market Co. (1945) 60 York Leg Rec (Pa) 33." Anno.: Lessee's option to purchase as affected by lessor's receipt of offer for, or sale of, larger tract which includes the leased parcel, 170 ALR 1068 (1947). When this annotation was written in 1947 there were only a few cases on the subject. However, the uniformity which existed then appears to have continued until today.

In Myers v. Lovetinsky, 189 NW2d 571, 575 (Iowa 1971), the court found: "This is a case in which landlords sell the whole farm including the demised premises to purchasers without separately pricing the demised premises and the rest of the farm. The decisions recognize in this kind of case, apparently without exception, that the landlord breaches the tenant's preferential right by so doing. [Citing numerous cases.]"

Applying Myers v. Lovetinsky, supra, in Berry-Iverson Co. v. Johnson, 242 NW2d 126, 127 (North Dakota 1976), the court (in its syllabus) held: "Failure of the owner to provide the tenant with an opportunity to exercise the preferential right to purchase with reference to the sale of the leased premises, where the leased premises are sold as part of a larger parcel, is a breach of the contractual agreement between the parties."[5]

In C & B Wholesale Stationery v. S. De Bella Dresses, 349 NYS2d 751, 753-754 (1973), the court had this to say concerning a situation similar to that presented here: "The lessor's sale of the leased premises as part of the larger parcel violated the first refusal clause of the lease (New Atlantic Garden v. Atlantic Garden Realty Corp., 201 App. Div. 404, 194 N.Y.S. 34, affd., 237 N.Y. 540, 143 N.E. 734; Costello v. Hoffman, 30 A.D. 2d 530, 291 N.Y.S. 2d 116). . . . The right which plaintiff enjoyed by virtue of the first refusal clause cannot be rendered nugatory by the device of attaching additional

---

[5] We are not concerned here with whether plaintiff can obtain specific performance as to the property subject to the right of first refusal, or specific performance as to the entire proposed sale, matters which were involved in some of the cases cited above.

land to the leased premises and finding a buyer for the entire parcel (Guaclides v. Kruse, 67 N.J. Super. 348, 359, 170 A.2d 488). Normally, the remedy of one in plaintiff's position would be an injunction forbidding the lessor's selling the leased premises to a third party, but in this case a sale of the larger parcel, including the leased premises, has already been completed. Thus, it is necessary to order a conveyance of title to the leased premises back to the lessor and to enjoin a further sale of the leased premises by the lessor to anyone other than plaintiff without giving the latter an opportunity to meet any bona fide offer of purchase thereof." See also Capalongo v. Giles, 425 NYS2d 225 (1980).

Defendants argue here that the cases from other jurisdictions cited above involved leases of real property and should not be applied to sales of businesses. They also argue that from a business standpoint the sale of Fairmont Cable TV separate from the sale of WEBBS Cable TV is not economically feasible. We find the cited lease cases applicable to sales of businesses; to find otherwise would facilitate defeat of contractual rights of first refusal by inclusion of extraneous matters. The Stocks should have foreseen the commercial need to combine WEBBS and Fairmont and should have insisted that Fairmont be included in the right of first refusal.

The defendants also argue that the price of the package sale to Tele-Media is in excess of $7,000,000.00 and that the plaintiff is without the financial resources to match that price. This is precisely why plaintiff's right of first refusal to purchase WEBBS Cable TV is not satisfied by a right to purchase WEBBS Cable TV along with Fairmont Cable TV, an office building and a residence, plus entering into various employment and consultancy agreements.

The Stocks' acceptance of this "package-transaction" constituted a breach of their contract with plaintiff. Therefore, the trial court erred in finding that Tele-Media's offer satisfied plaintiff's right of first refusal, which led to the court's refusal to enjoin the sale of WEBBS Cable TV by the Stocks to Tele-Media.

2. The Stocks and Tele-Media urge, however, that the issues here on appeal are moot because no supersedeas of the trial court's judgment was sought or obtained and because the sale has already been consummated. They rely on *Crim v. Sorrow,* 243 Ga. 477 (255 SE2d 19) (1979). There the debtor appealed the denial of a temporary injunction to stop foreclosure and sale of real property under a security deed. The grantees in the security deed bid the property in at the foreclosure sale. We found that the appeal was moot although the case itself was not moot, citing *Faulkner v. Ga. Power Co.,* 241 Ga. 618 (247 SE2d 80) (1978). That is, whatever right the debtor had to a temporary injunction against the grantee in the security deed could

be enforced by permanent injunction against the purchaser at the foreclosure sale (the grantee in the security deed). Defendants here concede that this case is not moot although they urge that this appeal is moot.

In *Faulkner v. Ga. Power Co.*, supra, residents on Redding Road sought to enjoin the construction and electrification of a high voltage line along that right of way. When the trial court denied the temporary injunction, the residents appealed. Georgia Power proceeded with the construction of the power line while the appeal was pending and argued here that the issues raised on appeal were moot.

This court pointed out that, with the denial of the interlocutory injunction, there was no legal or equitable bar to completion of the project by the power company. We also noted that Code Ann. § 55-110, prohibiting mandatory injunctions, had been repealed by the Civil Practice Act, Ga. L. 1967, pp. 226, 244, and that the superior court could now order the removal of a completed project if appropriate.[6] Thus, we concluded: "Having recognized that the bar of mootness is no longer as absolute as it once was, we deem it advisable to proceed case by case." Id. at p. 621. There, we found that, since the construction sought to be restrained had been completed at considerable expense to the power company and reversal of the denial of the temporary injunction would require the temporary removal of the electric line pending trial, the appeal from the *interlocutory* injunction was moot. We also emphasized, on motion for rehearing, that resolution of the residents' prayers for declaratory relief and a *permanent* injunction remained for decision in the trial court. Id. at 622. Therefore, if the residents were successful on the merits of their claims against the power company, the court could order the removal of the completed lines upon final hearing; i.e., the power company had proceeded to complete the construction of the line at the risk of having to remove it later.

The case now before us presents an entirely different set of circumstances. The controlling issue is one of law (interpretation of a contract) rather than one of facts found and balanced by the trial court. E.g., *Collins v. Collins,* 157 Ga. 85 (3) (121 SE 218) (1923); *Habif v. Maslia,* 214 Ga. 654 (106 SE2d 905) (1959). In addition, the court below erred in interpreting the contract and the applicable law.

---

[6] The authority to issue mandatory injunctions in appropriate cases has changed the rules as to mootness following the denial of a temporary injunction considerably, if not drastically.

Thus, under the case by case approach announced in *Faulkner v. Ga. Power Co.,* supra, 241 Ga. at 621, we find that plaintiff's appeal here from the denial of the temporary injunction is not moot. Judicial economy dictates that we entertain this controlling question of law on appeal from the denial of the interlocutory injunction rather than require the same issue to arise on appeal from denial of the permanent injunction.[7] While there was no legal or equitable impediment to the defendants consummating the sale between them, the Stocks and Tele-Media proceeded, with notice of plaintiff's claim, at their own risk pending review by this court of the denial of interlocutory relief. *Faulkner v. Ga. Power Co.,* supra, 241 Ga. at 622.

The Stocks and Tele-Media also argue strenuously that plaintiff's appeal is moot because no supersedeas was sought. They rely on language occurring frequently in our opinions where we have noted the fact that supersedeas was sought and obtained, or was not sought, as suggesting that at least some attempt to secure supersedeas is necessary in order to prevent the matter from becoming moot. No case since enactment of the CPA so holding has been cited or found, and under the CPA it is not necessarily so. The seeking or obtaining of supersedeas is not always determinative of the party's right to pursue an appeal; to rule otherwise would be to place an intolerable burden of emergency action on the superior courts and on this court merely as a formality to preserve the right to appeal. If supersedeas were sought but denied by this court and the appellant were ultimately victorious on the merits of the appeal, we would not deny relief for mootness. Therefore, since obtaining a supersedeas is not necessarily determinative of the mootness issue, we will proceed case by case and not require its pursuance in every case. However, it should be noted that an appellant who appeals the denial of injunctive relief without seeking supersedeas, see Code Ann. § 81A-162 (c)(e), does so at his own risk, just as does the appellee who proceeds with construction or sale pending the appeal. In the case before us, Tele-Media is a party defendant, not an innocent third party purchaser for value without notice, and the appellant's failure to seek supersedeas is therefore not determinative.

Having determined that this appeal should be decided on the question of law presented and having determined that the temporary injunction should have issued, we proceed to the question of what

---

[7] The defendants concede that the case itself is not moot. Their insistence that the appeal is nevertheless moot and that this court should not decide in this appeal the controlling question of law is an effort to delay the inevitable.

relief should now be granted in light of the fact that the sale between the Stocks and Tele-Media has been concluded pending appeal.

Because the sale between the Stocks and Tele-Media has been concluded (except for time payments), we will not here require that the sale be temporarily rescinded pending trial and final determination of this case. Instead, the trial court is directed to enter a temporary injunction covering such details as may be necessary to prevent Tele-Media from transferring or encumbering the stock or assets of WEBBS Cable TV, to prevent third parties from acquiring any interest in the stock or assets of WEBBS Cable TV, and to prevent or undo any action or inaction by the defendants which would preclude relief to plaintiff if upon the trial it is determined that plaintiff is entitled to relief.

*Judgment reversed with direction. All the Justices concur.*

DECIDED JUNE 30, 1982.

*Kilpatrick & Cody, William B. Gunter, Thomas C. Shelton, James Beverly Langford,* for appellant.

*Cofer, Beauchamp, Hawes & Brown, Robert S. Jones, Randolph A. Rogers, William P. Bailey, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, John R. Previs,* for appellees.