#25304-rev & rem-GAS

**2010 SD 70**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ADVANCED RECYCLING SYSTEMS, LLC,        Plaintiff and Appellee,

v.

SOUTHEAST PROPERTIES LIMITED
PARTNERSHIP,                                                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN K. CALDWELL
Judge

\* \* \* \*

RONALD A. PARSONS, Jr.
Johnson, Heidepriem &
  Abdallah, LLP
Sioux Falls, South Dakota
and
MARK D. O'LEARY
Sioux Falls, South Dakota                    Attorneys for plaintiff
                                                              and appellee.


MICHAEL J. SCHAFFER
PAUL H. LINDE OF
Schaffer Law Office, Prof., LLC
Sioux Falls, South Dakota                    Attorneys for defendant
                                                              and appellant.


\* \* \* \*

ARGUED APRIL 27, 2010

OPINION FILED **08/18/10**

#25304

SEVERSON, Justice

[¶1.]     Advanced Recycling Systems, LLC initiated this breach of contract action against Southeast Properties, LP, alleging that Southeast Properties violated Advanced Recycling's right of first refusal when it sold the 8th & Railroad Center development without first offering 110 South Reid Street, a portion of the development subject to a right of first refusal, to Advanced Recycling.  The trial court granted summary judgment in favor of Advanced Recycling.  Southeast Properties appeals.  We reverse and remand with instruction to enter a judgment consistent with this opinion.

## BACKGROUND

[¶2.]     Until 2004, Southeast Properties owned the 8th & Railroad Center development ("the development") located in downtown Sioux Falls, South Dakota.  The development consists of three properties:  110 South Reid Street; 106 North Reid Street; and, 110 North Reid Street.  Although each of the properties has its own address, legal description, and real estate tax statement, Southeast Properties considered the three properties one development.

[¶3.]     Advanced Recycling is a drop-off and processing station for waste management companies and other haulers to deposit recyclable materials such as paper products, plastics, and aluminum.  Advanced Recycling sorts, bales, and ships these materials to mills or other manufacturing facilities for processing and reuse.  Beginning in 1995, Advanced Recycling leased an aging, unheated building in the development known as 110 South Reid Street, as well as a small parcel of adjacent

#25304

land, ("the leased premises") from Southeast Properties.[1]  The parties' mutually

executed lease was for a term of three years, commencing October 1, 1995, and

ending September 30, 1998.

[¶4.]        The lease gave Advanced Recycling a right of first refusal on the leased

premises:

> The Tenant shall have first right of refusal to purchase the
> premises in the event the Landlord chooses to sell and produces
> a written bonafide offer to purchase. . . .  Tenant shall have
> thirty (30) days to match the bonafide offer and, should Tenant
> elect to match said offer, shall close on the purchase of the
> premises within an additional thirty (30) days from matching
> said offer or the date of closing as stated in the offer, whichever
> is later.

The parties agree that the right of first refusal provision was limited to the leased

premises and did not apply to the development as a whole.

---

1.      The lease defines "the premises" as:

> A block building on Tract 7, County Auditor Subdivision of the
> SE ¼, except R.R. R/O/W thereof, in Section 16-T101N-R49W,
> Minnehaha County, South Dakota, also known as 110 S. Reid
> Street, consisting of approximately 13,000 square feet of
> rentable area, located within the development commonly known
> as the 8th and R.R. Center, 401 East 8th Street, Sioux Falls,
> South Dakota.  Tenant also has the use of the adjacent land
> described as the area north of the block building rented by
> Tenant bounded by the property line on the east and on the
> north by a line parallel to the building front that is 86 feet north
> of the building and the area west of the building bounded on the
> south by the railroad right of way easement and on the west by
> a line parallel to the west side of the block building that is 100
> feet west of the building and the north by the line parallel to the
> north side of the building and 86 feet north of the building for
> purposes of driveways, the installation of a truck scale, docks,
> and exterior storage.  Driveways from Reid Street are available
> for Tenant's use in common with other Tenants.

-2-

[¶5.]        An addendum to the lease also gave Advanced Recycling an option to renew the lease:

> The Tenant shall have one two (2) year option to renew this lease at the expiration of the initial term, subject to the terms and conditions of the agreement, except that the base rent will be increased by three percent (3%) each year over the previous year. Notice of the Tenant's intention to exercise the option must be given to the Landlord in writing at least 90 days prior to the expiration of the term of this lease. If the notice is not given by the Tenant, the lease shall terminate at the end of the original term without further notice.

Advanced Recycling exercised its option to renew the lease for an additional two years from October 1, 1998, through September 30, 2000. In September 1999, Advanced Recycling and Southeast Properties agreed to extend the lease for an additional three years, and Advanced Recycling was given the option to renew the lease for an additional three-year term at the expiration of the lease on September 30, 2003. Advanced Recycling exercised this option to renew the lease for an additional three-year term ending September 30, 2006. Each lease renewal made clear that "all of the terms, covenants, provisions, and additions of the original lease [would] be binding and remain in full force."

[¶6.]        In 2004, Southeast Properties contracted to sell the development, including the leased premises, to 8th & Railroad Center, LLC. Southeast Properties entered into a commercial purchase agreement to sell the development in March 2004 and conveyed the development by warranty deed on July 15, 2004. The leased premises were not sold separately, but were sold as part of the development. Southeast Properties did not receive a separate bona fide offer for the purchase of the leased premises, and no specific value was allocated to the leased premises.

[¶7.] On July 23, 2004, Advanced Recycling received notice that the development had been sold.[2] Advanced Recycling did not assert its right of first refusal at that time, but remained in possession of the premises under the terms of the lease. When Advanced Recycling began negotiating a new lease with 8th & Railroad Center in the summer of 2006, it discovered the right of first refusal provision in the existing lease and contacted an attorney.[3] Advanced Recycling entered into a new lease with 8th & Railroad Center on September 29, 2006. This lease contained a release of Advanced Recycling's claims against 8th & Railroad Center for the alleged violation of the right of first refusal. The prior lease, including the right of first refusal provision, expired on September 30, 2006.

[¶8.] In January 2007, Advanced Recycling initiated this breach of contract action against Southeast Properties and 8th & Railroad Center, alleging that Southeast Properties violated the right of first refusal when it sold the development to 8th & Railroad Center without first offering the leased premises to Advanced Recycling. Advanced Recycling requested specific performance or monetary

---

2. There was no evidence presented at the summary judgment hearing that Southeast Properties acted in bad faith by selling the development as a whole to avoid the right of first refusal on the leased premises.

3. The original lease containing the right of first refusal provision was negotiated by Michael and Stewart Shaft on behalf of Advanced Recycling. At that time, the Shafts were responsible for the day-to-day operations of Advanced Recycling. The Shafts were asked to leave Advanced Recycling in 2006. Laurie and Gerald Cressman were the sole owners of Advanced Recycling at the time of trial, and Laurie managed the facility. Laurie was not a party to the negotiations of the terms of the original lease, but was responsible for negotiating the lease with 8th & Railroad Center in the summer of 2006.

damages. In June 2007, the parties stipulated to the dismissal of Advanced Recycling's claims against 8th & Railroad Center and for specific performance. The trial court entered an order to that effect in July 2007.

[¶9.] In November 2007, Advanced Recycling filed a motion for partial summary judgment on its breach of contract claim against Southeast Properties. Southeast Properties filed a cross-motion for summary judgment. A hearing on the motions was held in December 2007. The trial court subsequently issued a memorandum decision, granting summary judgment in favor of Advanced Recycling. The trial court rejected Southeast Properties' argument that Advanced Recycling's right of first refusal was not "triggered" because the leased premises were sold as part of a larger development. The trial court concluded that Advanced Recycling was entitled to monetary damages for the violation of the right of first refusal. After a bench trial on damages, the trial court awarded Advanced Recycling $484,542.36. Southeast Properties appeals.

## STANDARD OF REVIEW

[¶10.] This Court's standard of review of a grant or denial of a motion for summary judgment is well settled. "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we determine whether the moving party has demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." Janis v. Nash Finch Co., 2010 SD 27, ¶6, 780 NW2d 497, 500 (quoting Dykstra v. Page Holding Co., 2009 SD 38, ¶23, 766 NW2d 491, 496). "The evidence must be viewed most favorably to the nonmoving party, and reasonable doubts should be resolved against the moving

party." *Id.* (citation omitted). "The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists." *Id.* (citation omitted). But in considering a trial court's grant of a motion for summary judgment, this Court "will affirm only if all legal questions have been decided correctly[.]" Gerhts v. Batteen, 2001 SD 10, ¶4, 620 NW2d 775, 777 (citing Holzer v. Dakota Speedway, Inc., 2000 SD 65, ¶8, 610 NW2d 787, 791).

## ANALYSIS AND DECISION

[¶11.]    **1.    Whether Southeast Properties violated the right of first refusal when it sold the development without first offering the leased premises to Advanced Recycling.**

[¶12.]    It is essential to the resolution of this case to appreciate the difference between options and rights of first refusal. An option "gives the optionee the right to purchase the property at his election within an agreed period at a named price." Crowley v. Texaco, Inc., 306 NW2d 871, 873 (SD 1981) (citing Sinclair Ref. Co. v. Allbritton, 147 Tex 468, 218 SW2d 185 (1949)). *See* Ziegler Furniture and Funeral Home, Inc. v. Cicmanec, 2006 SD 6, ¶17, 709 NW2d 350, 355 ("An option to purchase real property may be defined as a contract by which an owner of real property agrees with another person that the latter shall have the privilege of buying the property at a specified price within a specified time, or within a reasonable time[.]") (quoting Kuhfeld v. Kuhfeld, 292 NW2d 312, 314 (SD 1980)). An option contract is an irrevocable offer by the owner to sell on specified terms and creates a power of acceptance in the optionee. Straley v. Osborne, 262 Md 514, 521, 278 A2d 64, 68 (1971) (citing 1A Corbin, *Corbin on Contracts* §§ 259, 260 (1963 ed))

(additional citations omitted). The option is exercised when the optionee accepts the irrevocable offer, and an enforceable contract of sale is created. *Id.*

[¶13.]    Unlike an option, a right of first refusal "does not entitle the [holder] to compel an unwilling owner to sell." Landa v. Century 21 Simmons & Co., Inc., 237 Va 374, 380, 377 SE2d 416, 419 (quoting Cities Serv. v. Estes, 208 Va 44, 47, 155 SE2d 59, 62 (1967)). A right of first refusal is a conditional and presumptive right. Chapman v. Mut. Life Ins. Co. of N.Y., 800 P2d 1147, 1150 (Wyo 1990) (quoting Hartnett v. Jones, 629 P2d 1357, 1362 n1 (Wyo 1981)). It requires the owner, when he receives a third-party offer to purchase the premises subject to the right of first refusal and manifests an intention or desire to sell on those terms, to offer the property first to the holder of the right on the same terms as the third-party offer. *Id.* Indeed, a right of first refusal ripens into an option contract when the owner receives the third-party offer and manifests an intention to sell on those terms. *Crowley*, 306 NW2d at 873 (citing Imperial Refs. Corp. v. Morrissey, 254 Iowa 934, 119 NW2d 872 (1963)). *See Chapman*, 800 P2d at 1150 (citing Myers v. Lovetinsky, 189 NW2d 571, 576 (Iowa 1971)) (additional citation omitted). If the owner does not offer the property to the holder of the right of first refusal on the same terms as the third-party offer, he breaches an enforceable option contract. *Landa*, 237 Va at 381, 377 SE2d at 420 (citations omitted).

[¶14.]    This case presents a question of first impression in South Dakota. Southeast Properties argues that the majority of courts have held that the owner of property does not violate a right of first refusal by selling a development, including leased premises subject to a right of first refusal, without first offering the leased

premises to the holder of the right. Advanced Recycling asserts that the undisputed facts establish that Southeast Properties breached an enforceable contract by selling the development to 8th & Railroad Center without first offering the leased premises to Advanced Recycling.

[¶15.]     The majority rule is consistent with the legal distinction between options and rights of first refusal. The right of first refusal is a conditional right that ripens into an enforceable option contract when the owner receives a third-party offer to purchase the property subject to the right and manifests an intention to sell on those terms. *Crowley*, 306 NW2d at 873. *See Chapman*, 800 P2d at 1150. "[A]n attempt to sell the whole may not be taken as a manifestation of an intention or desire on the part of the owner to sell the smaller optioned part so as to give the [holder of the right of first refusal] the right to purchase the same." *Id.* at 1151 (quoting Guaclides v. Kruse, 67 NJSuper 348, 357, 170 A2d 488, 493 (NJSuperCtAppDiv 1961)). *See* Manella v. Brown Co., 537 FSupp 1226, 1229 (D Mass 1982); Aden v. Estate of Walter E. Hathaway, 162 Colo 311, 314, 427 P2d 333, 334 (1967); *Straley*, 262 Md at 523, 278 A2d at 69; New Atl. Garden, Inc. v. Atl. Garden Realty Corp., 201 AppDiv 404, 412, 194 NYS 34, 40 (1922); Sawyer v. Firestone, 513 A2d 36, 39 (RI 1986); Smith v. Traxler, 228 SC 418, 431, 90 SE2d 482, 488 (1955). *See also* Gyurkey v. Babler, 103 Idaho 663, 667, 651 P2d 928, 932 (1982); *Myers*, 189 NW2d at 576. If the owner has not manifested an intention to sell the leased premises apart from the whole, the right of first refusal does not ripen into an enforceable option contract to purchase the leased premises. *Chapman*, 800 P2d at 1150-51. There was no evidence presented at the summary

judgment hearing that Southeast Properties entertained a third-party offer to purchase the leased premises apart from the development. *See supra* ¶6. Consequently, Advanced Recycling's right of first refusal did not ripen into an enforceable option contract to purchase the leased premises. *See Chapman*, 800 P2d at 1150-51.

[¶16.] Furthermore, the creation of a contract requires an offer by one party and an acceptance by the other. Standard Cas. Co. v. Boyd, 75 SD 617, 622, 71 NW2d 450, 453 (1955). "The general rule is that an acceptance must not change, add to, or qualify the terms of the offer" if there is to be a contract. Rossum v. Wick, 74 SD 554, 557, 56 NW2d 770, 771 (1953) (citations omitted). "An acceptance must be absolute and unqualified[.]" SDCL 53-7-3. "A reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance, but is a counteroffer." *Rossum*, 74 SD at 557, 56 NW2d at 771 (citations omitted).

[¶17.] This basic principle of contract law applies to the present case. A right of first refusal requires the owner to offer the property first to the holder of the right on the same terms as the third-party offer. *Chapman*, 800 P2d at 1150. Negotiations with the third party determine the terms of the offer the owner must submit to the holder of the right. *Id.* To create an enforceable contract of sale, the holder's acceptance of the offer must be "absolute and unqualified." *See* SDCL 53-7-3.

[¶18.] The right of first refusal required Southeast Properties to offer Advanced Recycling the leased premises on the same terms as any third-party offer.

*See supra* ¶4. Yet there was no evidence of an offer to purchase the leased premises separate from the development. *See supra* ¶6. The offer by 8th & Railroad Center to purchase the development in its entirety did not enlarge Advanced Recycling's right of first refusal. *See* Atl. Ref. Co. v. Wyo. Nat'l Bank of Wilkes-Barre, *et al.*, 356 Pa 226, 232, 51 A2d 719, 722-23 (1947) (citing *New Atl. Garden,* 201 AppDiv at 412, 194 NYS at 40). Because Advanced Recycling could only accept an offer to purchase the leased premises, its acceptance necessarily would have changed, added to, or qualified the terms of the offer to purchase the development. *See Rossum*, 74 SD at 557, 56 NW2d at 771. Not only did Advanced Recycling's right of first refusal fail to ripen into an enforceable option contract, but there was no valid offer open for Advanced Recycling's acceptance, and thus no enforceable contract of sale created in its favor. *See Atl. Ref. Co.*, 356 Pa at 234, 51 A2d at 724. For these reasons, Southeast Properties did not violate the right of first refusal or breach an enforceable contract when it sold the development without first offering the leased premises to Advanced Recycling.

[¶19.]     Nevertheless, Advanced Recycling argues that if Southeast Properties meant for the right of first refusal to apply only to a sale of the leased premises apart from the development, it could have so provided. Advanced Recycling contends that this Court should construe the right of first refusal provision against Southeast Properties, the drafter of the lease. This Court has said that "[a]mbiguities arising in a contract should be interpreted and construed against the scrivener." Campion v. Parkview Apts., 1999 SD 10, ¶34, 588 NW2d 897, 904 (quoting Prod. Credit Ass'n of the Midlands v. Wynne, 474 NW2d 735, 740 (SD

1991) (quoting Forester v. Weber, 298 NW2d 96, 97 (SD 1980))). "This is a rule of construction to be applied against one who drafted an ambiguous contract." *Id.* (quoting *Prod. Credit Ass'n*, 474 NW2d at 740). "Ambiguity is a question of law for a court to determine." Canyon Lake Park, LLC v. Loftus Dental, PC, 2005 SD 82, ¶18, 700 NW2d 729, 734 (citing Baker v. Wilburn, 456 NW2d 304, 306 (SD 1990)). In the present case, the meaning of the lease is unmistakably clear, and we decline to construe it against Southeast Properties.

[¶20.]  **2.  Whether the trial court erred by awarding Advanced Recycling monetary damages.**

[¶21.]    Advanced Recycling argues that Southeast Properties' violation of the right of first refusal resulted in substantial damages, entitling Advanced Recycling to an award of monetary damages. The trial court, relying on *Anderson v. Armour & Co.*, 205 Kan 801, 473 P2d 84 (1970), awarded Advanced Recycling $484,542.36. But *Anderson* is contrary to the great weight of authority and disregards the legal distinction between options and rights of first refusal. As noted above, the right of first refusal is not a completed contract, but only a conditional and presumptive right. *Chapman*, 800 P2d at 1150. *See supra* ¶¶13, 15. While Advanced Recycling argues that this is purely a breach of contract action,[4] the right of first refusal did

---

4.    Advanced Recycling stipulated to the dismissal of its claim for specific performance. Therefore, while some courts have granted specific performance in cases involving similar facts, we do not address whether specific performance is appropriate in this case or others like it. *See* Pantry Pride Enterp. v. The Stop & Shop Co., Inc., 806 F2d 1227, 1229 (4thCir 1986); Wilson v. Brown, 5 Cal2d 425, 55 P2d 485 (1936); Maron v. Howard, 258 CalApp2d 473, 66 CalRptr 70 (1968); Thomas & Son Transfer Line, Inc. v. Kenyon, Inc., 40 ColoApp 150, 574 P2d 107 (1977); Brenner v. Duncan, 318 Mich 1, 27 NW2d 320 (1947); Stuart v. Stammen, 1999 ND 38, 590 NW2d

(continued . . .)

not ripen into an enforceable option contract, and no contract of sale was created.

*See supra* ¶18. Because Southeast Properties did not breach an enforceable

contract, Advanced Recycling is not entitled to monetary damages.[5]

[¶22.]     **3.     Whether the trial court's calculation of monetary damages was clearly erroneous.**

[¶23.]     Southeast Properties argues that the trial court's calculation of

monetary damages was clearly erroneous. Because we conclude that Advanced

Recycling was not entitled to monetary damages, we need not address this issue.

[¶24.]     Reversed and remanded with instruction to enter judgment consistent

with this opinion.

---

(. . . continued)

224; Berry-Iverson Co. of North Dakota, Inc. v. Johnson, 242 NW2d 126 (ND 1976).

5.     This is not to say that no remedy is available in these cases. In order to maintain the status quo until the right of first refusal expires, several courts have enjoined the conveyance of the leased premises subject to the right of first refusal or ordered a reconveyance when title has already passed to a third party with actual or constructive notice of the right. *Manella*, 537 FSupp at 1229; *Gyurkey*, 103 Idaho at 668-69, 651 P2d at 933-34; *Myers*, 189 NW2d at 576-77; *Straley*, 262 Md at 524, 278 A2d at 70; *Guaclides*, 67 NJSuper at 359, 170 A2d at 494-95; *New Atl. Garden*, 201 AppDiv at 412, 194 NYS at 40-41; L.E. Wallach, Inc. v. Toll, 381 Pa 423, 429, 113 A2d 258, 261 (1955); *Atl. Ref. Co.*, 356 Pa at 238, 51 A2d at 725; *Sawyer*, 513 A2d at 39-40; *Chapman*, 800 P2d at 1152. But Advanced Recycling did not pursue its rights until after the lease expired. The original lease expired on September 30, 2006, and Advanced Recycling initiated this breach of contract action in January 2007. Because the right of first refusal expired with the lease, equitable remedies are not available on the facts of this case. *Myers*, 189 NW2d at 577; Johnnies Pelham Rd. Serv., Inc. v. Thomas, 26 AppDiv3d 414, 416, 809 NYS2d 561, 563 (2006) (citing Costello v. Hoffman, 30 AppDiv2d 530, 531, 291 NYS2d 116, 118 (1968)). We express no opinion as to whether equitable remedies are appropriate in these cases.

[¶25.]    GILBERTSON, Chief Justice, and ZINTER, Justice, and THORSTENSON, Circuit Court Judge, concur.

[¶26.]    KONENKAMP, Justice, concurs in result.

[¶27.]    THORSTENSON, Circuit Court Judge, sitting for MEIERHENRY, Justice, disqualified.


KONENKAMP, Justice (concurring in result).

[¶28.]    Not wanting to endorse prematurely the law and rationale the Court adopts in this case, I concur in result. It is sufficient to say, as the Court does in the end, that when Advanced Recycling's lease expired, "its right of first refusal expired with it." Advanced Recycling knew more than two years before the lease expired that the development had been sold. Under these circumstances, no equitable or legal relief could be granted.